STATE OF CONNECTICUT *v.* TIMOTHY J. SOLEK
(AC 20828)

Spear, Dranginis and Hennessy, Js.

Argued May 31—officially released October 2, 2001

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *C. Robert Satti, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Timothy J. Solek, appeals from the trial court's judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes §§ 53a-54a and 53a-8, and sexual assault in the second degree in violation of General Statutes § 53a-71. On appeal, the defendant claims that (1) the evidence was insufficient to support the conviction of sexual assault in the second degree, (2) the court improperly failed to instruct the jury on manslaughter in the first degree and manslaughter in the second degree as lesser offenses included within the greater offense of murder, and (3) the court improperly instructed the jury to disregard certain testimony and criticized the defendant's counsel, thereby depriving the defendant of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Late in the night of May 12, 1995, the defendant and Scott Smith, after an evening of drinking together, decided to go to the victim's apartment. The victim, a twenty-nine year old mentally disabled woman, was an acquaintance of theirs. At first, she was not interested

in letting them in; however, after some persistence, they went inside. Once inside, the defendant drank beer despite the victim's protests. He continued to antagonize her and made fun of her. The two then began to argue and she ordered him out. The defendant then said, "f*** you bitch," and threatened that he "would tie her up and throw her in the closet and burn her." A pushing match ensued. Smith then got behind the victim and started choking her. Meanwhile, Smith yelled to the defendant to get a knife, but finding none, the defendant grabbed a metal can opener and stabbed her in her head with it. Because she still was fighting and screaming, the defendant grabbed a clothes iron with his shirt and hit her in the head with it. He then kicked her several times while she spit up blood.

The defendant then shut off the television with his shirt so as not to leave a fingerprint. He also locked the door. The defendant watched Smith remove the victim's pants and sanitary napkin, and perform cunnilingus on her, which, according to the defendant's written statement to the police, sexually aroused the defendant. He ordered Smith out of his way, and forcibly had vaginal and anal sex with the victim while Smith masturbated.

Finally, after some twenty minutes and after hearing an ambulance siren in the distance, Smith wanted to leave. The two threw some empty beer cans on the front lawn and left for the defendant's apartment. After Smith borrowed a clean pair of pants from the defendant and left, the defendant called the police "because I knew that I helped kill her, but I didn't kill her, I tried to stab her but it was self-defense." The defendant gave police a graphic and detailed written statement of the events.

Medical evidence offered at trial established that the cause of death was strangulation. It further indicated

that the victim suffered several injuries to her face, including oval shaped lacerations and bruises in a triangular pattern consistent with a clothes iron, and bruising and lacerations in and around her vaginal area consistent with blunt force trauma.[1] Those injuries occurred either before or at about the same time as her death.

The defendant was arrested on May 14, 1995.[2] After a trial to a jury, the defendant was convicted of murder and sexual assault in the second degree; he was acquitted of felony murder, sexual assault in the first degree and capital felony. The defendant was sentenced to a total effective term of fifty-five years imprisonment. This appeal followed.

I

The defendant first claims that the evidence was insufficient to convict him of sexual assault in the second degree because the medical evidence established that the victim was already dead, and not merely unconscious, at the time of the assault.[3] We disagree.

The defendant properly preserved his challenge to the sufficiency of the evidence to convict him of sexual

---

[1] Acid phosphatase, a substance found in semen, was found in the victim's oral, vaginal and anal cavities.

[2] Smith was also arrested and charged in connection with the incident. See *State* v. *Smith*, 65 Conn. App. 126, 782 A.2d 175 (2001). On June 28, 1995, the court granted the defendant's motion to sever the two cases. Separate probable cause hearings ensued and, pursuant to *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), the defendant's statements were not admitted into evidence in Smith's case, and Smith's statements were not admitted in the defendant's case. Consequently, judges in the two hearings on probable cause made different findings, leading the defendant and Smith to be charged differently.

[3] The defendant's claim as to the sufficiency of the evidence is limited to whether the jury reasonably could have concluded that the victim was physically helpless at the time of the assault. Therefore, we assume that the jury reasonably concluded that the defendant caused the injuries to the victim's face and vaginal area. We note, however, that the evidence clearly supports such a finding.

assault in the second degree by timely excepting to the court's denial of his motion for a judgment of acquittal. See *State* v. *Hufford*, 205 Conn. 386, 397, 533 A.2d 866 (1987).

"In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . The scope of our factual inquiry on appeal is limited. This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citations omitted; internal quotation marks omitted.) *State* v. *White*, 64 Conn. App. 126, 132–33, 779 A.2d 776, cert. denied, 258 Conn. 910, 782 A.2d 1251 (2001).

Pursuant to § 53a-71 (a), "[a] person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (3) such other person is physically helpless . . . ." General Statutes § 53a-65 (6) defines "physically helpless" as a

person who is "unconscious or for any other reason is physically unable to communicate unwillingness to an act."

We conclude that the jury reasonably could have found that the victim was physically helpless at the time of the assault. At trial, the state presented the testimony of the deputy chief medical examiner for the state, Edward T. McDonough. He testified that the victim died from asphyxia due to neck compression. He further testified, however, that the injuries the victim suffered to her face, including pattern injuries consistent with a clothes iron and the oval shaped indentations, occurred at about the same time as her death. He so testified on the basis of swelling in that area because swelling "is a vital process." McDonough testified that the bruises and injuries that the victim suffered to her vaginal area occurred at or near the time of death. He testified on cross-examination that bruising may, in rare cases, occur postmortem; however, swelling must occur antemortem. Consequently, it was reasonable for the jury to conclude that the injuries the victim sustained as a result of the defendant's assault occurred antemortem. It was reasonable for the jury to infer that the victim was rendered unconscious by either strangulation by Smith, the defendant's striking her in the head with a clothes iron and kicking her, or a combination thereof and that therefore she was physically helpless at the time of the assault.

Even if we assume arguendo that the victim was dead at the time of the assault, we are not persuaded that the victim could not be considered "physically helpless" because she was deceased.

"Our analysis is governed by well established principles of statutory construction. Statutory construction is a question of law and, therefore, our review is plenary. . . . [O]ur fundamental objective is to ascertain and

give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .

"When the statute in question is one of a criminal nature, we are guided by additional tenets of statutory construction. First, it is axiomatic that we must refrain from imposing criminal liability where the legislature has not expressly so intended. . . . Second, [c]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant. . . . Finally, unless a contrary interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 255 Conn. 782, 788–89, 772 A.2d 559 (2001).

" 'The rule of strict construction, however, does not require that the most narrow, technical and exact meaning be given to the language of a statute in frustration of an obvious legislative intent. . . . Common sense should be applied to the language of a penal statute, particularly if otherwise absurdity or frustration of the evident design of the legislature results.' " *State* v. *Albert*, 50 Conn. App. 715, 726, 719 A.2d 1183 (1998), aff'd, 252 Conn. 795, 750 A.2d 1037 (2000).

The resolution of whether the victim could be considered physically helpless when she was deceased turns on the definition of physically helpless in § 53a-65 (6). We conclude that the statutory language is clear and unambiguous. General Statutes § 53a-65 (6) clearly provides that a person is physically helpless if such person

is *"for any . . . reason . . .* physically unable to communicate unwillingness to an act." (Emphasis added.) Clearly, a person who is deceased is physically unable to communicate an unwillingness to act. The defendant's interpretation would render absurd results, as a defendant would avoid culpability for a sexual assault in the second degree when the assault commences when the victim is alive, but concludes when the victim dead.

Our Supreme Court rejected a similar notion in *State v. Usry*, 205 Conn. 298, 533 A.2d 212 (1987), in which, as in this case, forensic evidence established that the defendant had intercourse with the victim near the time of death. The court wholly rejected the defendant's argument that he could not be guilty of sexual assault in the first degree because his victim was deceased and that, at most, he could be guilty only of sexual assault in the fourth degree.[4] Id., 317. The court stated, "It would be strange indeed if the penalty under our law would be less severe if the defendant sexually assaulted the victim and in so doing caused her death than it would be if he sexually assaulted the victim and did not cause her death. That would . . . encourage assailants to kill their victims when committing a sexual assault. Sexual assault in the fourth degree occurs when an assailant commits sexual assault on a dead body, but the assailant is not involved in causing the victim's death. When, however, the assailant kills the victim in order to commit a sexual assault, he has committed sexual assault in the first degree." Id., 317–18.

Similarly, in *State v. Rodgers*, 198 Conn. 53, 61, 502 A.2d 360 (1985), the court stated that although "[sexual assault in the first degree] does not include sexual intercourse with a victim whom the assailant finds uncon-

---

[4] General Statutes § 53a-73a (a) provides in relevant part that a person is guilty of sexual assault in the fourth degree when "(3) such person engages in sexual contact with an animal or dead body . . . ."

scious," a defendant is guilty of sexual assault in the first degree when the defendant strangles the victim into a state of unconsciousness.

In this case, the defendant was charged with and convicted of murdering the victim by aiding Smith in causing her death by striking her with an iron, stabbing her with a can opener and kicking her repeatedly. We conclude that, the defendant having played such a role in causing the victim's death, his claim that he could not be found guilty of sexual assault in the second degree is wholly without merit.

## II

The defendant next claims that the court abused its discretion in failing to charge the jury on manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1) as lesser offenses included within the greater offense of murder. We disagree.

"A defendant does not have a fundamental constitutional right to a jury instruction on every lesser included offense . . . rather, the right to such an instruction is purely a matter of our common law. . . . Under [*State v. Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980)], [a] defendant is entitled to an instruction on a lesser offense if, and only if . . . (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently

to find the defendant innocent of the greater offense but guilty of the lesser." (Citation omitted; internal quotation marks omitted.) *State* v. *Sotomayor*, 61 Conn. App. 364, 378–79, 765 A.2d 1, cert. granted on other grounds, 255 Conn. 952, 770 A.2d 32 (2001).

The state first argues that the defendant did not satisfy the first prong of *Whistnant* because his request to charge did not sufficiently state the facts supporting the lesser included offenses.[5] We agree with the state.

"A proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book [§ 42-18]. . . . Practice Book § 42-18 (a) provides in relevant part: When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. . . . Our Supreme Court has held that in the context of a written request to charge on a lesser included offense, [the] requirement of [Practice Book § 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Citations omitted; internal quotation marks omitted.) *State* v. *Corbin*, 61 Conn. App. 496, 520–21, 765 A.2d 14, cert. granted on other grounds, 256 Conn. 910, 911, 772 A.2d 1124, 1125 (2001). "A mere general statement of the entire incident at issue does

---

[5] The defendant's factual basis in his request to charge was as follows: "The defendant's statement to the police (Exhibit 43) indicates at worst an intent to cause serious injury but does not include an intent to cause the death of the victim. No other evidence was offered as to the defendant's mental state. Those same acts could also be found to have been reckless in that the defendant was aware of a substantial risk of death to the victim and consciously disregarded that risk [and] assuming that Scott Smith was choking the victim at the time, such conduct would be [a] gross deviation from the standard of conduct of a reasonable person."

not comply with our rules of practice." *State* v. *Hall*, 213 Conn. 579, 591–92, 569 A.2d 534 (1990); see also *State* v. *Corbin*, supra, 521 (defendant merely recited relevant statutory sections pertaining to unlawful restraint in second degree and comparison to charge of kidnapping and did not place requests in separately numbered paragraphs); *State* v. *McPhee*, 58 Conn. App. 501, 516–17, 755 A.2d 893 (defendant merely stated facts alleged in information and equated facts with lesser included offense), cert. denied, 254 Conn. 920, 759 A.2d 1026 (2000).

"While this court does not favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved . . . the ever increasing refinement of our law justifies cooperation of counsel in stating requests for jury instruction. The minor burden of cooperation imposed by [Practice Book § 42-18] is neither unreasonable nor novel." (Internal quotation marks omitted.) *State* v. *DeBarros*, 58 Conn. App. 673, 694, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000).

In this case, the defendant's request to charge referred to his statement to the police, but to no particular facts stated therein. Thus, the defendant did not provide the factual predicate necessary for the charges in his request. His request is a bald assertion that the evidence supports the charges requested. Although it is necessary to be concise, the defendant must do more than point to particular exhibits or recite facts; he must analyze the law as it applies to those facts such that the court may properly rule on his request. See *State* v. *McPhee*, supra, 58 Conn. App. 517. The defendant's request also was inadequate in that it did not place the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree in sepa-

rate paragraphs. Rather, they were lumped together in one paragraph.[6]

We therefore conclude that the defendant failed to make a proper request to charge under the first prong of *Whistnant*. Even if the defendant had satisfied the first prong, we conclude that his claim nevertheless would fail under the third and fourth prongs of *Whistnant*.[7]

"For the third and fourth requirements of *Whistnant* to be satisfied, there must be *sufficient* evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense." (Emphasis in original.) *State* v. *Sotomayor*, supra, 61 Conn. App. 379.

The offense of murder requires that the defendant intentionally cause the death of another; General Statutes § 53a-54a (a); while the offense of manslaughter

[6] The defendant argues that his requests to charge adequately described the facts so as to meet the first prong of *Whistnant*. He urges this court to compare his requests to those deemed adequate in *State* v. *Arena*, 235 Conn. 67, 76–77, 663 A.2d 972 (1995). We conclude that *Arena* is inapposite. In that case, the defendant was convicted of robbery in the first degree. Id., 68. On appeal, the defendant claimed that he was entitled to a charge on robbery in the second degree as a lesser included offense. Id., 72–73. Our Supreme Court held that the instruction was appropriately requested because it "contained a complete statement of the essential facts [that] would have justified the court in charging in the form requested." (Internal quotation marks omitted.) Id., 76.

In that case, however, the charge required the defendant to display or threaten "the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument"; General Statutes § 53a-135 (a) (2); and the defendant referred to the testimony of two clerks that he had carried a plastic shopping bag that he placed on the counter and that they thought the bag contained a firearm. Id., 72–73 n.6. Here, the only facts that the defendant referred to are "[t]hose same acts" that are in his written statement to the police. See footnote 5.

[7] As to the second prong of *Whistnant*, it is well settled that "manslaughter in the first and second degrees . . . are lesser included offenses within the crime of murder." (Internal quotation marks omitted.) *State* v. *Rasmussen*, 225 Conn. 55, 66 n.11, 621 A.2d 728 (1993).

in the first degree provides that a person is guilty when, with intent to cause serious physical injury to another person, he causes the death of such person; General Statutes § 53a-55 (a) (1); or under circumstances evincing extreme indifference to human life, he recklessly engages in conduct that creates a grave risk of death and causes the death of another. General Statutes § 53a-55 (a) (3). Manslaughter in the second degree requires the defendant to have recklessly caused the death of another person. General Statutes § 53a-56 (a) (1). We conclude that there was insufficient evidence presented to justify a finding of guilty of manslaughter in the first degree or manslaughter in the second degree and, therefore, that the defendant was not entitled to instructions on those lesser included offenses.

The defendant argues that the only evidence of his intent was found in his statement to the police, specifically, that Smith was trying to "gag" the victim. He argues that in aiding Smith, he intended only to restrain the victim, not to kill her. He further argues that there is no evidence of planning, concealing the crime or use of a deadly weapon. He also contends that the victim's injuries from the can opener were not consistent with an intent to kill. We reject the defendant's assertions.

"We consistently have concluded that 'the specific intent to kill may be proven solely by circumstantial evidence, as long as that evidence establishes beyond a reasonable doubt that the defendant had the conscious objective to take the life of another. . . . The defendant's intent to kill, therefore, may be inferred from evidence of the defendant's use of a deadly weapon, the manner in which the weapon was used, and the nature and number of wounds inflicted.' " *State* v. *Delgado*, 247 Conn. 616, 623, 725 A.2d 306 (1999). "It is axiomatic that a factfinder may infer an intent to kill from circumstantial evidence such as the type of weapon used, the manner in which it was used, the

type of wound inflicted and the events leading to and immediately following the death." (Internal quotation marks omitted.) *In re Keijam T.*, 221 Conn. 109, 119, 602 A.2d 967 (1992).

In this case, the defendant beat his victim with a clothes iron, stabbed her with a can opener and kicked her several times as she was spitting up blood. Such a brutal beating clearly evinces an intent to kill. The jury also reasonably could have concluded that he also attempted to conceal his crime by covering his hand with his shirt before grabbing the iron[8] and turning off the television so as to not leave fingerprints. Therefore, we cannot "as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." *State* v. *Ray*, 228 Conn. 147, 155, 635 A.2d 777 (1993). The element of intent, which differentiates the lesser offenses from the offense charged was not sufficiently in dispute to permit the jury reasonably to have found the defendant innocent of the greater offense but guilty of either of the lesser offenses.

### III

The defendant finally claims that the court's jury instruction deprived him of a fair trial because the court improperly instructed the jury to disregard portions of his cross-examination of medical experts and improperly criticized defense counsel's cross-examination of those experts, thereby undermining his credibility. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. The defendant's theory of the case was that if the jury concluded that he had injured the victim with the can opener and

---

[8] The defendant argues that the jury reasonably could have concluded that his statement, "I tried to grab her iron with my shirt but it didn't work," meant that he intended to threaten to hit the victim, but that the threat did not work. We find that claim wholly without merit.

clothes iron or that he had sexually assaulted her, then he had done so *after* Smith had killed her. Thus, when McDonough, the deputy chief medical examiner, testified, defense counsel attempted to show that death came quickly to the victim. Thus, the defense cross-examined McDonough using a textbook on forensic pathology to show that death may have come quickly.[9] McDonough acknowledged that the text was authoritative and that he would rely on it.[10] Defense counsel then read three paragraphs, the information in which McDonough agreed was correct. The state's serology expert, Beryl Novich, also agreed that she considered another textbook authoritative.[11] She found a passage that was read to her to be inapplicable to the case. The textbooks, however, were not offered as exhibits.

"Upon the direct examination of an expert witness on medical science, extracts from treatises in that science which he states are recognized by his profession as authoritative and which have influenced or tend to confirm his opinion may be used. . . . In the cross-examination of the expert witness, such extracts may be used by incorporating them in questions to him to test his qualifications and to impeach his testimony." (Citations omitted.) *Kaplan* v. *Mashkin Freight Lines, Inc.*, 146 Conn. 327, 331, 150 A.2d 602 (1959); see also *Ames* v. *Sears, Roebuck & Co.*, 8 Conn. App. 642, 651, 514 A.2d 352 (relevant portions of treatise may be admitted into

---

[9] McDonough testified that he could not determine how quickly the victim became unconscious or how long she remained in that state.

[10] The text, V. DiMaio, Gunshot Wounds: Practical Aspects of Firearms, Ballistics, and Forensic Techniques (2d Ed. 2000), provided information on the current methods of detecting semen, the rate at which sperm decomposes, whether contusions may form postmortem and how long it takes for a person to become unconscious when that person's carotid arteries are compressed.

[11] The textbook, entitled Forensic Science: An Introduction to Criminalistics, was used in an effort to impeach the witness on the rate of sperm decomposition.

evidence in court's discretion if treatise is recognized as authoritative by expert witness and it influenced or tended to confirm expert's opinion), cert. denied, 201 Conn. 809, 515 A.2d 378 (1986). Thus, the content of the textbook passages was properly before the jury in this case.

The court charged the jury in relevant part: "There was argument as well concerning matters that may not have been brought to your attention because the claim that there wasn't evidence here to challenge, challenge the book by the doctor that was made referenced by way of cross-examination of the doctor from the chief medical examiner's office. You're not going to decide the case on what you didn't hear, so don't, at this point, don't draw any inference from the failure of someone else to challenge somebody because the evidence you hear is for you to accept or reject in whole or in part. And, because you hear something doesn't mean that you accept it. And, nor does it mean if you disbelieve that the contrary is true. You understand that you have to have evidence to find facts, not in a vacuum. . . . You will consider only what you believe to be the facts that have been presented from this witness stand or from the exhibits that you will have with you. If there has been mention of other things outside the area of the definition I've given you, oral testimony or exhibits, disregard it. You are to consider only such evidence as was admitted." On appeal, the defendant characterizes that instruction as an improper direction to exclude testimony elicited on cross-examination. We disagree.

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic

search for possible error. . . . The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. . . . We must review the charge as a whole to determine whether it was correct in law and sufficiently guided the jury on the issues presented at trial. . . .

"Our standard of review on this claim is whether it is reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *Marshall* v. *O'Keefe*, 55 Conn. App. 801, 804–805, 740 A.2d 909 (1999), cert. denied, 252 Conn. 918, 744 A.2d 438 (2000).

The defendant claims that the cited passage from the court's jury instructions is confusing. We conclude that the instructions as a whole did not mislead the jury. The instruction apparently was an effort to instruct the jury not to draw any adverse inference from the defendant's failure to call the authors of the texts as witnesses[12] and to direct the jury to consider only the oral testimony and exhibits before it.

---

[12] In its closing argument to the jury, the state argued in relevant part: "And then you have a woman who becomes unconscious. According to Dr. McDonough, he can't tell you based on his field of expertise how long she would be unconscious before she actually died. He can't do that. The state would submit that we will hear from the defense argument that according to some guy named DiMaio, and DiMaio, you never saw him, some fancy book they bring into court here, remember that, you know, that's a book, and books can all be interpreted, we didn't hear from this guy, DiMaio, did we, who said that strangulation occurs in two seconds or ten minutes or thirty hours. Doctor said I can't tell. That's your witness, not some book

The defendant further argues in his principal brief that the court destroyed the credibility of defense counsel when, in its jury instruction, the court "said that trial counsel misled the jury in his cross-examination of the state's medical experts by a learned treatise, and it said that trial counsel had threatened the jury in his closing argument." The defendant directs us to no portion of the transcript in which the court criticizes counsel for misleading the jury. We therefore reject his claim.

The defendant does, however, specifically refer to that part of the court's instruction that stated: "One other thing, and I'm not critical of counsel, but I do want you to put this beside you, you're not here for, as I said, any penalty phase. So, the emotional argument concerning his life hangs in the balance and how you think tomorrow, six months or three years from now, [is] improper. That's a veiled threat, it shouldn't be. You're here to decide this case under your oath to do the right thing based on the evidence you've heard, the credible evidence that you believe is true. So, put aside something emotional that has to do with sympathy for anybody." We conclude that the defendant's claim that this statement undermined the credibility of defense counsel is without merit.

The principles guiding a trial judge in conducting a criminal trial are well established. "Due process requires that a criminal defendant be given a fair trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . . In a criminal trial, the judge is more than a mere moderator of the proceedings. It is his responsibility to have the trial conducted

---

that you don't even know what it says."

In its rebuttal closing argument, the state further argued: "I mean, why would we need fifteen of you if we just go and pick up DiMaio's book? Did you hear anybody on that witness stand, and look over to it now, did you hear a doctor get up there and testify about what DiMaio says in his book?"

in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. . . . Consistent with his neutral role, the trial judge is free to question witnesses or otherwise intervene in a case in an effort to clarify testimony and assist the jury in understanding the evidence so long as he does not appear partisan in doing so." (Citations omitted; internal quotation marks omitted.) *State* v. *Robertson*, 254 Conn. 739, 769–70, 760 A.2d 82 (2000).

The defendant, in his principal brief, indicates that the remark that prompted the instruction was defense counsel's statement in closing that "proof beyond a reasonable doubt is not a patchwork quilt. Proof beyond a reasonable doubt is a seamless whole. It is that kind of evidence that makes you confident in your decision now, tomorrow, next week, next year and ten years from now." Our review of the transcript, however, suggests that the court's concern centered on the broader impact of defense counsel's closing argument in that it appealed to the jury to consider that the defendant's life was in jeopardy and that the jury may be faced with doubts about the outcome for years to come. "An appeal to emotions, passions, or prejudices improperly diverts the jury's attention away from the facts and makes it more difficult for it to decide the case on the evidence in the record." *State* v. *Alexander*, 254 Conn. 290, 307, 755 A.2d 868 (2000).

In this case, the court properly intervened to ensure that the jurors considered the defendant's guilt or innocence, not on the basis of the punishment that he might receive, but on the basis of the evidence adduced. The court did not appear partisan in doing so. To the contrary, it specifically told the jury that it was not being critical of counsel. The court repeatedly instructed that the jurors are "the sole and exclusive judges of the facts," and further stated that "if I made any reference to the position of the state or the accused, I assure [you

that] it's not my intention to convey to you directly or indirectly any feelings on behalf of this court as to what the outcome of the case should be."

The court's passing remark that defense counsel made an "veiled threat" would not have affected the jury's consideration of the evidence or of whether the state had established its burden of proof in light of the court's instruction that the jury decide the issues for itself. See *State* v. *Patavino*, 51 Conn. App. 604, 611, 724 A.2d 514 (concluding that curative instruction sufficiently eliminated possible prejudice to defendant that might arise from court's threat of contempt to defense counsel), cert. denied, 249 Conn. 919, 733 A.2d 236 (1999). "Unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions." (Internal quotation marks omitted.) *State* v. *Coughlin*, 61 Conn. App. 90, 96, 762 A.2d 1 (2000), cert. denied, 255 Conn. 934, 767 A.2d 105 (2001).

The judgment is affirmed.

In this opinion the other judges concurred.