### TIMOTHY J. SOLEK *v.* COMMISSIONER OF CORRECTION
### (AC 27405)

Bishop, McLachlan and Harper, Js.

Argued January 10—officially released May 6, 2008

*Paul R. Kraus*, special public defender, for the appellant (petitioner).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Gerard P. Eisenman*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BISHOP, J. The petitioner, Timothy J. Solek, appeals from the judgment of the habeas court dismissing his amended petition for a writ of habeas corpus. Following the dismissal, the court granted the petition for certification to appeal. On appeal, the petitioner claims that the court improperly (1) determined that he had abandoned the claims of the first count of his habeas petition and (2) concluded that he was not denied the effective assistance of trial and appellate counsel. We affirm the judgment of the habeas court.

The following undisputed facts and procedural history are relevant to our discussion of the petitioner's appeal. On or about May 13, 1995, the petitioner and Scott Smith were arrested and charged with murder. Subsequently, an amended information was filed by the state, charging the petitioner with capital felony in violation of General Statutes § 53a-54b, felony murder in violation of General Statutes § 53a-54c, murder in violation of General Statutes § 53a-54a (a), sexual assault in the first degree in violation of General Statutes §§ 53a-70 (a) (1) and 53a-8, and sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3). Following trial, the jury found the petitioner guilty of murder and sexual assault in the second degree and not guilty of capital felony, felony murder and sexual assault in the first degree. The court sentenced the petitioner to a total effective term of fifty-five years incarceration. During the petitioner's criminal trial, he was represented by attorneys James J. Ruane and Michael Fitzpatrick, and by attorney Lisa J. Steele on appeal.

Smith, who was tried separately, was found guilty by a jury of murder, sexual assault in the first degree and sexual assault in the third degree. This court affirmed both the petitioner's conviction; *State* v. *Solek*, 66 Conn.

App. 72, 783 A.2d 1123 (2001); and Smith's conviction. *State* v. *Smith*, 65 Conn. App. 126, 782 A.2d 175 (2001). The Supreme Court denied the petitioner's request for certification to appeal. *State* v. *Solek*, 258 Conn. 941, 786 A.2d 428 (2001). The Supreme Court, however, granted Smith's petition for certification to appeal and, thereafter, reversed his conviction, concluding that the trial court's failure to instruct the jury on the lesser included offense of manslaughter in the first degree was improper. *State* v. *Smith*, 262 Conn. 453, 815 A.2d 1216 (2003). As a result of the Supreme Court's reversal of Smith's conviction, the petitioner's appellate counsel filed a motion with that court for reconsideration of its denial of the petition for certification to appeal from this court's affirmance of his conviction. That motion was denied on September 18, 2003.

The petitioner's fourth amended petition for a writ of habeas corpus consists of three counts. In the first count, the petitioner alleged that his conviction should be set aside due to errors made by the trial court. The latter two counts alleged ineffective assistance of trial and appellate counsel. A habeas hearing was held in December, 2005, at which the petitioner, Ruane, Fitzpatrick and Steele testified before the court. The court dismissed all three counts of the petition on January 4, 2006. A petition for certification to appeal was granted and this appeal followed.

I

The petitioner first claims that the court improperly concluded that he had abandoned the claims enumerated in the first count of his habeas petition.[1] We disagree.

---

[1] In his first count, the petitioner claimed that the trial court violated his right to due process by failing to charge the jury on manslaughter in the first and second degrees and violated his rights to due process and to counsel by failing to allow him to argue his defense of intoxication to the jury, improperly commenting on the court's lack of interest in his case in front of the jury, chastising defense counsel during a cross-examination in front

The following procedural history is relevant to our review of the petitioner's claim. At the beginning of the habeas trial, counsel for the petitioner outlined to the court the bases for the petitioner's claims in count one of his habeas petition. During direct examination of Steele by the respondent, the commissioner of correction, the court engaged in a colloquy with habeas counsel for the petitioner about the propriety of the court, on a habeas petition, resolving the petitioner's claims regarding the actions of the trial court during the underlying criminal trial. After all the witnesses had been examined, counsel for the respondent indicated his readiness to continue directly to closing arguments. The court initially refused, stating: "No, you're not, no. We have a broad range of claims here starting off with the first count, which is some kind of a standing in the air claim that the court is supposed to find that the petitioner's due process rights were infringed upon. We've got—you've delivered to me hundreds and hundreds of pages of transcripts and excerpts and all things like that, and it's not a case that you're going to stand up here and give me a nice short argument and then I'm going to have to struggle through all those records to find out what is relevant to the claims you're making."

The following colloquy with habeas counsel for the petitioner then ensued:

---

of the jury, chastising defense counsel for his closing argument in front of the jury and improperly commenting on the defendant's use of a learned treatise for impeachment purposes.

Two of these claims, use of a learned treatise and failure to charge the jury on manslaughter, were raised unsuccessfully by the petitioner on direct appeal to this court. See *State* v. *Solek*, supra, 66 Conn. App. 80–90. As a result, the respondent, the commissioner of correction, argued to the habeas court and to this court that the petitioner is collaterally estopped from raising these two issues again. The petitioner counters that collateral estoppel is an affirmative defense that the respondent failed to raise in her reply and that she is, therefore, barred from raising it now. As we resolve this count on different grounds, we need not reach the issue of whether these two claims are barred by collateral estoppel.

"The Court: What about you, counsel? You represent the petitioner. You have the burden of proof here.

"[The Petitioner's Counsel]: I would argue. I don't think I would go more than ten minutes. It would take me ten to twelve minutes to argue and kind of focus in on what I think is important, so that would be my request.

"The Court: So, you're content with just an argument as well?

"[The Petitioner's Counsel]: Yes, Your Honor.

"The Court: And then what?

"[The Petitioner's Counsel]: Then, I would assume you'd look through the evidence and come to a decision.

"The Court: Okay. If that's what you want to do. Go ahead, [counsel]. Let's do arguments then."

Counsel for the petitioner proceeded with his closing argument, during which he did not address count one of his fourth amended petition. Subsequently, the court informed the petitioner's counsel that if "you stand up here and argue and there aren't going to be any briefs and you don't argue some claim that's in this petition, I'm going to deem it abandoned. You've got to make some argument here." On rebuttal, counsel for the petitioner once again failed to address count one. Neither party submitted briefs to the habeas court.

Before addressing the petitioner's claim, we identify our standard of review for habeas corpus proceedings.[2]

[2] Both parties argued at the habeas trial and in their appellate briefs whether the claims in count one were subject to procedural default. Typically, in a habeas case, the respondent replies to the petition with the affirmative defense of procedural default to all claims that could have been raised through a direct appeal, and subsequently, the petitioner sets forth claims in avoidance of procedural default. "The appropriate standard for reviewability of habeas claims that were not properly raised at trial . . . or on direct appeal . . . because of a procedural default is the cause and prejudice standard. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal

On appeal, "[t]he underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense." (Citation omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152, 662 A.2d 718 (1995).

The parties are not in agreement regarding our standard of review of a habeas court's finding that a claim has been abandoned. Because, however, the idea of abandonment involves both a factual finding by the trial court and a legal determination that an issue is no longer before the court, we will treat this claim as one of both law and fact. Accordingly, we will accord it plenary review. See *Duperry* v. *Solnit*, 261 Conn. 309, 335, 803 A.2d 287 (2002).

On the basis of our thorough review of the record, we conclude that the petitioner made no mention, let alone argument, in support of the claims set forth in the first count of the petition after the court had informed counsel that it would consider, as abandoned, any claims not urged on the court during final argument. Practice Book § 5-2 provides: "Any party intending to raise any question of law which may be the subject of an appeal must either state the question distinctly to the judicial authority in a written trial brief under Section 5-1 or state the question distinctly to the judicial authority

and actual prejudice resulting from the impropriety claimed in the habeas petition. . . . [T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance . . . ." (Citations omitted; internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 40, 779 A.2d 80 (2001). In this case, however, because we conclude that the claims were abandoned, we do not reach the issue of procedural default.

on the record before such party's closing argument and within sufficient time to give the opposing counsel an opportunity to discuss the question. If the party fails to do this, the judicial authority will be under no obligation to decide the question."

The petitioner argues that there is evidence, admitted through various exhibits, that is probative of the claims in count one. We are unpersuaded. It is not the responsibility of the trial judge, without some specific request from a petitioner, to search a record, often, in a habeas case, involving hundreds of pages of transcript, in order to find some basis for relief for a petitioner. As our Supreme Court has stated: "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . These same principles apply to claims raised in the trial court." (Citation omitted; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 266 Conn. 108, 120, 830 A.2d 1121 (2003).

In the case at hand, the petitioner filed no brief in support of his claims; in argument, he made no reference to the claims set forth in the first count of his petition. His suggestion, at trial, that the court "look through the evidence and come to a decision" cannot reasonably be seen as an attempt to alert the court to the viability of the claims in his first count. The responsibility of a habeas court, in confronting an often voluminous trial court record, is to respond to those claims fairly advanced by the petitioner. The mere recital of those claims in a petition, without supporting

oral or written argument, does not adequately place those claims before the court for its consideration. This is particularly true when counsel has been warned by the court, as in this instance, that it would consider abandoned any claims not advanced by counsel in closing argument. Because the petitioner did not argue any of the claims in his first count in any greater specificity other than to assert his entitlement to relief, we conclude that the court properly deemed them abandoned.

## II

The petitioner next claims that the court improperly rejected his allegations of ineffective assistance of trial and appellate counsel. The petitioner claims that trial counsel was ineffective for failing to secure jury instructions as to the lesser included offense of manslaughter, and appellate counsel was ineffective for failing to secure a reversal of the judgment of conviction on this basis. The petitioner also claims that trial counsel was ineffective for failing to make argument to the jury on intoxication and that appellate counsel was ineffective for failing to secure a reversal of the judgment of conviction on this basis.

We first note that the standard of review for whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. *Ricks* v. *Commissioner of Correction*, 98 Conn. App. 497, 502, 909 A.2d 567 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007). The sixth amendment to the United States constitution has long guaranteed the right to assistance of counsel in all criminal prosecutions. U.S. Const., amend. VI. The sixth amendment right to counsel is made applicable to state prosecutions through the due process clause of the fourteenth amendment. See *Gideon* v. *Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). "It has long been recognized that the

right to counsel is the right to the effective assistance of counsel." *McMann* v. *Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

"In *Strickland* v. *Washington*, [466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . .

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Kaddah* v. *Commissioner of Correction*, 105 Conn. App. 430, 436–37, 939 A.2d 1185, cert. denied, 286 Conn. 903, 943 A.2d 1101 (2008).

In reviewing claims of ineffective assistance of appellate counsel, we apply the two part *Strickland* test; however, the proper focus in assessing the prejudice prong is the result of the trial, not the appeal. "To satisfy the prejudice prong, a petitioner must . . . establish that, as a result of appellate counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. Put another way, [the petitioner] must establish that, because of the failure of his appellate counsel to raise a [particular] claim, there is a reasonable probability that [the petitioner] remains burdened by an unreliable determination of his guilt. . . . In order to prevail on a claim of ineffective assistance of appellate counsel, therefore, a habeas petitioner must show not only that his appeal would have been sustained but for counsel's deficient performance, but also that there is a reasonable probability that the trial verdict would have been different." (Citation omitted.) *Vivo* v. *Commissioner of Correction*, 90 Conn. App. 167, 173, 876 A.2d 1216, cert. denied, 275 Conn. 925, 883 A.2d 1253 (2005).

A

The petitioner claims that trial counsel was ineffective for failing to secure jury instructions as to the lesser included offense of manslaughter and that appellate counsel was ineffective for failing to secure a reversal of the judgment of conviction on this basis. The petitioner argues that trial and appellate counsel were ineffective

because they failed to argue from the full record of evidence in support of this charge. We disagree.

The following additional procedural history relates to the petitioner's claim. Prior to charging the jury, trial counsel submitted a request to charge on the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree. Trial counsel then argued the request to the court. The court denied the request because, in the court's opinion, "manslaughter just doesn't fit, based on the testimony, the facts of this case."

On direct appeal to this court, the petitioner's appellate counsel argued that the court should have given the requested charge. This court disagreed. This court applied the four factors of *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980),[3] to the petitioner's claim that the trial court abused its discretion in failing to charge the jury on the lesser included offense of manslaughter. Although this court concluded that the request to charge did not comply with Practice Book § 42-18,[4] as it was too general and made only a "bald

---

[3] The four-pronged *Whistnant* test for whether a court failed to charge on a lesser included offense provides: "A defendant is entitled to an instruction on a lesser offense if, and only if . . . (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant*, supra, 179 Conn. 588; see also *State* v. *Greene*, 274 Conn. 134, 155–56, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006).

[4] Practice Book § 42-18 (a) provides: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. Requests to charge should not exceed fifteen in number unless, for good cause shown, the judicial authority permits the filing of an additional

assertion" that the evidence supported the requested charge, this court determined, nevertheless, that the petitioner's request, even if it had been adequately specific, would not have satisfied the third and fourth *Whistnant* factors. *State* v. *Solek,* supra, 66 Conn. App. 82–83. This court concluded that even if the petitioner's claim had satisfied the first *Whistnant* factor, it would nevertheless fail because the evidence was insufficient to justify a finding of guilt for the lesser included offense of manslaughter. Id., 83.

Upon affirmance by this court of the petitioner's conviction on direct appeal, one of the issues appellate counsel raised in the petition for certification to our Supreme Court was the requested manslaughter charge. That petition was denied. When Smith's case was reversed by our Supreme Court on the ground that the trial court failed to charge the jury on manslaughter, appellate counsel filed a motion for reconsideration of the denial of the petition for certification. It was also denied.

The petitioner argues that trial and appellate counsel were ineffective because they did not make reference to the full record in their respective arguments at trial and on appeal in regard to the lesser charge of manslaughter. The petitioner refers to the trial evidence that there was no forced entry, as well as testimony from a neighbor that initially the victim, Smith and the petitioner were having a good time. The petitioner argues that had trial counsel appropriately marshaled this evidence in support of his request for a manslaughter charge, the court likely would have acceded to his request. We are unpersuaded.

Whatever this evidence may have suggested as to the mood of Smith, the petitioner and the victim earlier

number. If the request is granted, the judicial authority shall apply the proposition of law to the facts of the case."

on in the evening, it would not provide a basis for determining that the petitioner lacked the intent to kill later in the evening. In fact, after a thorough review of the entire record, we conclude, as this court did in the petitioner's direct appeal, that the evidence was insufficient to support a charge of manslaughter. Furthermore, the petitioner did not offer any expert testimony by which to determine whether counsel's performance deviated from the acceptable standards of criminal defense counsel. As the evidence in the record was insufficient to entitle the petitioner to a charge of manslaughter, the petitioner was not prejudiced by the form of counsel's request to charge, nor was appellate counsel deficient in her presentation of this issue on appeal.

## B

The petitioner also claims that trial counsel was ineffective for failing to secure the opportunity to argue a defense of intoxication to the jury and that appellate counsel was ineffective for failing to secure a reversal of the judgment of conviction on that basis. This argument is not supported by the facts.

The record of the petitioner's criminal trial reveals that at the close of evidence, the court declined to charge on the intoxication defense. After the petitioner's trial counsel finished closing argument, however, the court announced, sua sponte, that it would provide the intoxication instruction. In response, the state requested and was granted the opportunity to address the issue of intoxication. Trial counsel also had the opportunity to make this request but did not.[5] As Ruane explained in his testimony during the habeas trial, he

---

[5] After the state's request to argue was granted, Ruane did not request argument but, rather, asked that the court reconsider its previous decision and admit twelve beer cans into evidence.

specifically declined to pursue argument on intoxication as a matter of trial strategy because he believed it was not the petitioner's strongest argument, that it would open the door for a rebuttal by the state and that it would "leave the case in the jury's hands and the last thing they hear from the parties is a stronger argument by the state." Ruane explained that his primary objective was to obtain an acquittal on the charge of sexual assault in the first degree and, thereby, to save the petitioner's life.[6]

The petitioner relies on *State* v. *Arline*, 223 Conn. 52, 612 A.2d 755 (1992), for the proposition that trial counsel's failure to request argument was a violation of his constitutional right to effective assistance of counsel. In *Arline*, our Supreme Court held that the court's limitation of a central argument in the defendant's final argument improperly encroached on the defendant's right to effective assistance of counsel. Id., 64–65. The petitioner's reliance on *Arline* is misplaced, however, because in the case at hand, trial counsel had the opportunity to argue the issue of intoxication. Counsel testified at the habeas hearing that he declined this opportunity for strategic reasons. "[T]he [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 689. As the habeas court credited Ruane's testimony that the decision not to argue intoxication was a matter of trial strategy, the petitioner failed to demonstrate that counsel's actions were unreasonable.

Steele testified at the habeas trial that she did not believe that *Arline* was relevant to the petitioner's case, as the trial court did not prevent trial counsel from

---

[6] If the petitioner had been convicted of sexual assault in the first degree as an element of capital felony, he would have potentially faced the death penalty.

making an argument on intoxication and that her strategy on appeal was to emphasize her strongest issues. Although she acknowledged that the intoxication claim was not frivolous, she also stated her belief that it was not one of the petitioner's strongest arguments.[7] We have stated that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible . . . ." (Internal quotation marks omitted.) *Vivo* v. *Commissioner of Correction*, supra, 90 Conn. App. 172. We find no fault with appellate counsel's decision to present, on appeal, only those issues she considered to be the strongest. Additionally, the habeas court had an adequate evidentiary basis from which to conclude that trial counsel's failure to argue the issue of intoxication was a matter of trial strategy. We conclude, therefore, that the petitioner failed to demonstrate that trial and appellate counsel's actions in regard to securing argument on intoxication were unreasonable.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] In describing why she chose to limit the number of claims on appeal, the petitioner's appellate counsel stated: "[O]ne of the things we do is pick the best issues, and the general received wisdom in the appellate bar is [that] you're normally looking at between one and three issues and if you're not going to win on the best three, you're not going to win by adding four or five or six to the same brief. There's a limited amount of pages in the

brief, there's a limited amount of time for oral argument and normally, again, the perceived wisdom is that the shotgun approach just doesn't work."