Charles C. DEAN, Petitioner–Appellant,

v.

SUPERINTENDENT, CLINTON COR-RECTIONAL FACILITY, and Depart-ment of Correctional Services, Respon-dents–Appellees.

No. 1057, Docket 95–2351.

United States Court of Appeals,
Second Circuit.

Argued May 14, 1996.

Decided Aug. 20, 1996.

J. Scott Porter, Syracuse, NY, for Appel-lant.

Susan D. Nusbaum, Assistant District At-torney, Erie County, Buffalo, NY (Kevin M. Dillon, District Attorney of Erie County, John J. DeFranks, Assistant District Attor-ney, Erie County, Buffalo, NY, of counsel), for Appellees.

Before MESKILL and MINER, Circuit Judges, and SCULLIN *, District Judge.

* Honorable Frederick J. Scullin, United States District Judge for the Northern District of New York, sitting by designation.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Western District of New York, Heckman, J., denying a petition for a writ of habeas corpus. Because we conclude that the petitioner has not carried his burden of showing that he objected to an insanity defense or that his will was overborne, we hold that he was not denied effective assistance of counsel. Accordingly, we affirm the denial of the petition.

## BACKGROUND

On September 20, 1984, petitioner Charles C. Dean was convicted by a jury in the Supreme Court of New York, Buffalo, New York on two counts of first degree burglary in violation of N.Y. Penal Law §§ 140.30(2), 140.30(3), four counts of sodomy in the first degree in violation of N.Y. Penal Law §§ 130.50(1), 130.50(3), and two counts of kidnapping in the second degree in violation of N.Y. Penal Law § 135.20. The jury heard the following evidence.

On July 5, 1983, between the hours of 1:00 a.m. and 3:00 a.m., petitioner broke a window and entered the home of Cecelia Williams. There, he abducted Williams' ten year old daughter Andrea at knifepoint, covering her eyes with a pair of boys pants. He took Andrea to his mother's residence, approximately five minutes away, where he broke a window to gain entry to the house. There, he repeatedly sodomized Andrea before falling asleep.

Although Dean had put band-aids over Andrea's eyes, she was able to see him through the band-aids as daylight broke. She recognized Dean as someone she had seen at least twice before.

When Dean heard his mother returning home, he put Andrea in a bedroom closet. Later, he took her out of the closet and pushed her outside onto a side stairway. Andrea recognized her friend Katie's house next door. A friend discovered her there, wrapped her in a pillowcase and brought her home.

At home, Andrea told her mother that the man who had visited their home a few weeks earlier took her to his house, next door to her friend Katie's house, and raped her. Her mother then took her to Children's Hospital where fluid samples were taken and placed in a rape kit.

The subsequent search of Dean's mother's home revealed a box of band-aids in the bedroom, band-aid wrappers in the bedroom garbage can, a jar of vaseline, a pair of boys pants, Andrea Williams' key ring (with house key), and crumpled-up band-aids with eyelash hairs stuck to them next to the outside of the house. The investigation at the Williams' home produced petitioner's fingerprints on a piece of glass found outside the broken window of the house.

At trial, defense counsel pursued an intoxication/insanity defense. In his opening statement, he argued that the prosecution likely would prove that Dean abducted Andrea and was "guilty of certain acts," but that he was not capable of forming the intent required to convict. In support of this theory, counsel presented the testimony of several of Dean's friends and of a psychiatrist. Dean's friends testified that Dean was drinking heavily throughout the July 4th weekend and was extremely intoxicated by the evening of July 4th.

The defense psychiatrist testified that Dean's drinking produced organic brain syndrome, causing him to lose all rational ability and any sense of right or wrong. He further testified that Dean already had been convicted of a sex crime involving a minor and that there was "no doubt that he did it." Finally, he testified that Dean denied involvement in the crime and was very much opposed to a temporary insanity defense when he interviewed him in October 1983, nearly a year before the trial. The government's psychiatric witnesses corroborated Dean's opposition to the insanity defense.

Dean testified against the advice of counsel. Out of the presence of the jury, counsel stated to the court:

> I'm warning him that it's over my advice ..., but making clear that ... I will deliver the summation and control the remainder of the defense of this case including calling psychiatric witnesses to the stand as we have discussed....

I'm very adamant about him not interfering in my attempts and intentions to have psychiatric experts testify ... and I think to some extent between us that's somewhat of a tradeoff also that he be allowed to testify as well.

Dean took the stand and testified before the jury that he was intoxicated on July 4th, that Cecelia Williams, with whom he had been having an intimate relationship, had given him the key to her home and that he could not recall any of his activities at the time of the crime. He denied any involvement in the abduction, and although he recalled seeing Andrea outside his mother's house after he awoke, he specifically denied pushing Andrea out of the house.

In summation, counsel argued that Dean's condition precluded him from forming the intent required to convict. He also attempted to explain Dean's testimony in the following manner:

In fact, you've heard evidence from Mr. Dean's own mouth that even as he sits here today he's not in complete agreement with what the defense of this case is. You've heard every psychiatrist testify that he resented, rejected and did not want a defense of non-responsible by reason of mental disease or defect. What seems to you like it might be so easy to fake is very hard....

We haven't attempted to prove that Mr. Dean was in Chicago when it happened or it wasn't him or it's a mistaken identity....

This Defendant is not cooking up something. Something is being proven here over his objections.

In the prosecutor's summation, he explicitly declined to review the evidence because he "agree[d] with defense counsel."

The jury convicted Dean on all counts. Dean thereafter filed a *pro se* post-trial motion to vacate his conviction pursuant to New York Criminal Procedure Law section 330.30(1). He argued that defense counsel "betrayed" him in failing to pursue the defenses discussed prior to trial. The trial court denied the motion. On December 19, 1984, the state trial judge sentenced Dean as a second felony offender to a total term of 37–1/2 to 75 years imprisonment.

In a brief prepared by counsel in Dean's state court appeal, Dean argued that trial counsel's concession of guilt and solicitation of expert testimony which conflicted with Dean's testimony constituted ineffective assistance of counsel. In his *pro se* supplemental brief, Dean also contended that he "was never in agreement with assigned counsel defence [sic] theory." The Appellate Division, Fourth Department, affirmed the judgment of conviction. *People v. Dean*, 155 A.D.2d 868, 547 N.Y.S.2d 478 (4th Dep't 1989). On January 30, 1990, the New York Court of Appeals denied Dean's leave to appeal based on the same argument. *People v. Dean*, 75 N.Y.2d 812, 552 N.Y.S.2d 562, 551 N.E.2d 1240 (1990).

On September 7, 1990, Dean filed a petition for a writ of habeas corpus in the United States District Court for the Western District of New York, Heckman, *J.* Dean argued, *inter alia*, that trial counsel rendered ineffective assistance when he admitted and elicited Dean's guilt without his consent and pursued a defense of insanity through intoxication, which conflicted with Dean's own testimony and was against his wishes. On May 22, 1995, the district court denied the petition, concluding, *inter alia*, that counsel's decision to put forth a mental defect defense was a sound strategic choice in light of the overwhelming evidence of guilt. The district court issued a certificate of probable cause and this appeal followed.

## DISCUSSION

The two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), applies to habeas corpus review of ineffective assistance of counsel claims. *Kimmelman v. Morrison*, 477 U.S. 365, 381–82, 106 S.Ct. 2574, 2586–87, 91 L.Ed.2d 305 (1986). Thus, the petitioner must demonstrate that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 692, 104 S.Ct. at 2064–65, 2067. Moreover, the petitioner "must overcome the presump-

tion that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). However, the reviewing court must determine "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696, 104 S.Ct. at 2069.

Few courts have addressed the issue before us: the constitutional implication of the imposition of an insanity defense over the objections of a competent defendant.[1] In *United States v. Marble,* the Court of Appeals for the District of Columbia condemned imposition of an insanity defense by the court as interfering with a defendant's right to conduct his own defense. *United States v. Marble,* 940 F.2d 1543, 1547 (D.C.Cir.1991). More specifically, the court stated that because it could "no longer distinguish the decision not to plead insanity from other aspects of a defendant's right, established in *Faretta,* to direct his own defense," courts must defer to the strategic decision of a competent defendant. *Id.* (citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). In *Jones v. State,* the Nevada Supreme Court held that defense counsel may not concede, in presenting an insanity defense, that a defendant committed the acts with which he is charged if the defendant testifies and disavows guilt. *Jones v. State,* 110 Nev. 730, 877 P.2d 1052, 1057 (1994). There, the court reasoned that such action by defense counsel would completely erode any doubt that might be raised by the defen-

dant's testimony. Presuming prejudice as a matter of law, the court concluded that defense counsel's strategy so interfered with defendant's testimony as to constitute ineffective assistance of counsel. *Id.*

It clearly is preferable for counsel to leave the decision whether or not to reject a legal defense to the client. "[T]he lawyer should always remember that the decision whether to forego legally available objectives or methods because of non-legal factors is ultimately for the client and not for himself." Model Code of Professional Responsibility EC 7–8 (1983).

However, the case law reveals significant uncertainty surrounding the constitutional status of a defendant's right to reject an insanity defense. Moreover, the different bases on which courts have relied in disapproving of insanity defenses imposed over defendants' objections highlight both the importance and the difficulty of the question presented. Accordingly, "[i]n keeping with our duty to avoid deciding constitutional questions presented unless essential to proper disposition of a case," we decline to decide whether the Sixth Amendment, as applied through the Fourteenth Amendment here, prohibits counsel from imposing an insanity defense on an unwilling defendant. *Harmon v. Brucker,* 355 U.S. 579, 581, 78 S.Ct. 433, 434–35, 2 L.Ed.2d 503 (1958) (per curiam). Judicial restraint requires us to avoid answering the constitutional question absent a showing that the defendant in fact objected to an insanity defense. *See Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, *J.,* concurring) (noting that a court should avoid answering a constitutional ques-

---

1. Although few courts have addressed the precise issue before us, several courts have concluded that the failure to pursue an insanity defense over the objections of the client does not constitute ineffective assistance of counsel because that decision belongs to the client. *See, e.g., Lowenfield v. Phelps,* 817 F.2d 285, 292 (5th Cir.1987) ("The circumstances are extremely rare when counsel is not required to follow his client's instructions on a decision of this nature."), *aff'd,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *United States v. Brierley,* 464 F.2d 529, 530 (3d Cir.1972) (holding that counsel is not ineffective in rejecting insanity defense if client clearly would have rejected it), *cert. denied,* 410

U.S. 943, 93 S.Ct. 1379, 35 L.Ed.2d 610 (1973); *Snider v. Cunningham,* 292 F.2d 683, 685 (4th Cir.1961) ("A prisoner who insists that he did not commit a crime can hardly be forced by his counsel to confess it in order to support a tenuous defense of insanity."); *People v. Morton,* 173 A.D.2d 1081, 1084, 570 N.Y.S.2d 846, 849 (3rd Dep't 1991) ("[C]ounsel had no authority to pursue any defense other than the one authorized by defendant."), *leave to appeal denied,* 78 N.Y.2d 1129, 578 N.Y.S.2d 886, 586 N.E.2d 69 (1991); *People v. Mac Dowell,* 133 Misc.2d 944, 946–47, 508 N.Y.S.2d 870, 872 (Sup.Ct.1986) ("[T]he decision whether to forego a legal defense is ultimately for the client and not for the lawyer.").

tion if an alternative basis of decision fairly presents itself).

■ Assuming that a criminal defendant possesses a fundamental right to accept or reject an insanity defense, that right is derivative of the right to the "making of a defense." *See Faretta,* 422 U.S. at 818, 829, 95 S.Ct. at 2532–33, 2538 (interpreting the Sixth Amendment as "constitutionaliz[ing] the right in an adversary criminal trial to make a defense as we know it"). Like the right of self-representation, therefore, the right to accept or reject an insanity defense or plea can be subjected to practical constraints. *See United States v. Teague,* 953 F.2d 1525, 1539 (11th Cir.) (in banc) (Birch, *J.,* concurring in the result) (noting that the right to proceed *pro se* is qualified by a timeliness requirement), *cert. denied,* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992); *see also Faretta,* 422 U.S. at 834–35 n. 46, 95 S.Ct. at 2541 n. 46 (noting practical limitations on right of self-representation). Thus, it is appropriate for a court reviewing a claim of ineffective assistance of counsel based upon the imposition of an insanity defense to acknowledge and consider the inevitable conflict between a lawyer's duty to represent a client zealously and a lawyer's duty to safeguard the fundamental rights of the client.

Defense counsel's task in tempering his or her judgment as a trained advocate with his or her responsibilities as counsel is a delicate one. As a distinguished academic has noted:

> Counsel cannot plead a client guilty, or not guilty, against the client's will. But counsel may and *must* give the client *the benefit of counsel's professional advice on this crucial decision; and often counsel can protect the client from disaster only by using a considerable amount of persuasion to convince the client that a plea which the client instinctively disfavors is, in fact, in his or her best interest.*

Anthony G. Amsterdam, Trial Manual 5 for the Defense of Criminal Cases § 201, at 339 (1988) (citation omitted) (emphases added).[2]

**2.** This manual is a joint project of the American College of Trial Lawyers, the National Defender Project of the National Legal Aid and Defender Association, and the ALI–ABA Committee on Continuing Professional Education.

■ Thus, a court reviewing an ineffective assistance of counsel claim based on the imposition of an insanity defense must be careful not to confuse, through the prism of hindsight, persuasion with coercion and disagreement with objection. Rather, the court must review such a claim in the context of an adversarial process which the Constitution advances as the essential ingredient of a fair trial.

■ Thus, in accordance with the burden imposed on the defendant by *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, a petitioner claiming ineffective assistance of counsel based on counsel's imposition of an insanity defense over petitioner's objection bears the burden of showing that he in fact objected. In accordance with our acknowledgement of the vigor with which competent defense counsel *advises* a client on a strategic decision as significant as an insanity defense or plea, a petitioner who does not state an objection on the record must show not only that he "disagreed" with counsel, but that his "will was 'overborne' by his counsel." *See Teague,* 953 F.2d at 1535 (affirming district court's determination that the defendant's "will was not 'overborne' " on the decision not to testify). Disagreement colored by acquiescence is not sufficient.

■ On this record, Dean has not met his burden of showing that he in fact objected to an insanity defense. At the time of the relevant testimony and argument concerning Dean's mental state, Dean remained silent. In fact, as far as this record reveals, he did not direct an objection to the court at any time during the trial. The closest Dean ever came to expressing dissatisfaction with an insanity defense, other than in his *pre-trial* psychiatric interviews, was during re-cross-examination. In answer to a question, he explained that he had told his attorney prior to trial that he was not completely truthful with the psychiatrists because he did not want an insanity defense.[3] This testimony

**3.** On re-cross-examination, the prosecution asked Dean: "Do you remember telling [Dr. Farooq] that you were never treated for mental illness?" Dean answered: "Well, I told—I told my attor-

falls far short of an objection to imposition of an insanity defense.

On this record, Dean also has failed to meet his alternative burden of showing that his will was "overborne" by counsel. In fact, the record before us suggests that although Dean initially disagreed with the defense strategy, he ultimately acquiesced to the more experienced judgment of a trained advocate. The colloquy between the court and defense counsel regarding Dean's desire to testify suggests a compromise between defense counsel and Dean: Dean would have the opportunity to testify and counsel would be allowed to present psychiatric testimony. *See id.* (noting that counsel believed the defendant had "assented or acceded to her recommendation"). Our interpretation of the record is supported by the absence of any request by Dean for new counsel or any indication to the court of a breakdown of communications between defense counsel and Dean. Even more importantly, the record indicates that Dean took an active role in his defense, taking notes during trial and contacting the trial judge personally by letter and telephone.[4] Thus, Dean was not incapable of making known his views. Accordingly, there is no indication in the record that Dean's will was overborne by defense counsel.

Considering that Dean could testify only that he could not have committed these crimes, because he could not remember anything from the hours during which the crimes were committed, defense counsel's strategy is understandable. The insanity defense did not conflict with Dean's testimony because Dean did not testify that he *did not* commit the crimes. Rather, his lack of memory supported the strategy pursued by counsel.

In short, petitioner has not carried his burden of showing that he objected to the insanity defense or that his will was overborne. Accordingly, we conclude that Dean was not denied effective assistance of counsel. The assistance rendered by Dean's counsel was not only competent, but reasonable under the circumstances of this case.

## CONCLUSION

We reject petitioner's claim of ineffective assistance of counsel. The judgment of the district court denying the petition for a writ of habeas corpus is affirmed.

---

ney that I wasn't being honest with the doctors because I didn't want that type of defense."

4. Because the content of Dean's correspondence with the trial judge is not part of the record on appeal, we assume that the correspondence does not support the claim advanced on appeal.