## NABIL KADDAH v. COMMISSIONER OF CORRECTION
## (AC 27778)

Harper, Lavine and Mihalakos, Js.

---

Argued September 20, 2007—officially released January 22, 2008

*Jodi Zils Gagne*, special public defender, for the appellant (petitioner).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Gerard P. Eisenman*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

MIHALAKOS, J. The petitioner, Nabil Kaddah, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus. On appeal,

the petitioner claims that the court (1) abused its discretion in denying the petition for certification and (2) improperly rejected his claim that his first habeas counsel provided ineffective assistance.[1] We dismiss the appeal.

The relevant facts are set forth in the opinion in the petitioner's direct appeal.[2] "Between 3 and 3:30 a.m. on August 27, 1994, the [petitioner], while driving his gray Pontiac Grand Prix, approached Leanne Kollar on Middle Street in Bridgeport. Kollar, who was working as a prostitute, entered the [petitioner's] car in anticipation of engaging in sex for money. The [petitioner] drove around Bridgeport, eventually stopping on Salem Street. He turned off the engine and locked the doors to the vehicle. The [petitioner] then began to choke Kollar, telling her that, if she removed her clothes, he would not hurt her. Kollar began to undress, and the [petitioner] reclined her seat back and started to choke her again. Kollar managed to open the car door in an attempt to escape, and the [petitioner] began hitting and punching her. They both rolled out of the car together, after which the [petitioner] kneeled over Kollar and continued strangling her. After hitting the [petitioner] and knocking the [petitioner's] eyeglasses off his face, Kollar was able to flee to a nearby house. The [petitioner] then drove away.

"When the police arrived, Kollar gave them a description of the [petitioner] and told the officers where the

---

[1] The petitioner claims that the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut provide a right to effective assistance of counsel. Although the petitioner refers to his right under article first, § 8, of the Connecticut constitution, he has failed to explain why he is entitled to any greater protection under the due process clause of the state constitution than he is under the analogous provisions of the federal constitution. See *State* v. *Sullivan*, 244 Conn. 640, 646 n.6, 712 A.2d 919 (1998). We therefore limit our review to the petitioner's federal constitutional claim. See, e.g., *State* v. *Rogelstad*, 73 Conn. App. 17, 20 n.4, 806 A.2d 1089 (2002).

[2] *State* v. *Kaddah*, 250 Conn. 563, 565–66, 736 A.2d 902 (1999).

[petitioner] lived, as she had been to his apartment on prior occasions. The police went to the [petitioner's] apartment and waited for him to return. Meanwhile, the [petitioner] returned to Middle Street and picked up Jennifer Williamson, another prostitute. The [petitioner] drove to the corner of Maplewood and Laurel Avenues, where he and Williamson engaged in a physical struggle. The [petitioner] hit Williamson, bit her on the back and strangled her. During the struggle, Williamson stopped moving and the [petitioner] pushed her out of the car and drove away.

"Sara Iza, a resident of Laurel Avenue, saw the [petitioner's] car on Maplewood Avenue at approximately 5:30 a.m. on August 27, 1994. When her husband, Luis Iza, went outside to start his car at approximately 6 a.m., he saw Williamson's naked body lying in the street, in the same spot where Sara Iza had seen the [petitioner's] car stop earlier. Malka Shah of the office of the chief medical examiner testified that Williamson died from asphyxia, which had been caused by strangulation.

"At his trial, the [petitioner] raised the defenses of mental disease or defect and, alternatively, extreme emotional disturbance. The jury rejected these defenses and found the [petitioner] guilty of the murder of Williamson and the attempted murder and unlawful restraint of Kollar." *State* v. *Kaddah*, 250 Conn. 563, 565–66, 736 A.2d 902 (1999). The court sentenced the petitioner to a total effective term of seventy-five years imprisonment. Our Supreme Court subsequently affirmed the conviction. See id., 581.

In 2001, the petitioner, represented by attorney Salvatore Adamo, filed his first petition for a writ of habeas corpus, alleging that his appellate counsel, attorney Glenn Falk, had rendered ineffective assistance in the direct appeal of the underlying criminal case because he had failed to argue the existence of a conflict

between the petitioner and his trial attorney, James Ruane, and had failed to raise a Connecticut constitutional claim. The petitioner further alleged that Ruane had rendered ineffective assistance in the underlying criminal case. The petitioner alleged, among other things, that Ruane had asserted the defense of mental disease or defect against the petitioner's wishes, did not permit the petitioner to testify on his behalf and failed to argue effectively against the sparse medical evidence used to convict the petitioner.

The court, *White, J.*, denied the habeas petition. The petitioner appealed from the judgment of the habeas court but withdrew the appeal before this court rendered judgment.

Thereafter, in 2004, the petitioner filed a second petition for a writ of habeas corpus, claiming that Adamo was ineffective as the petitioner's first habeas counsel. The petitioner alleged that Adamo was ineffective because he failed to question Falk or to introduce any evidence regarding Falk's ineffective assistance as appellate counsel and failed to question Ruane properly. Specifically, the petitioner alleged that Adamo inadequately questioned Ruane in the areas of whether the petitioner knew he had the right to testify at trial and whether the petitioner wanted to raise the defense of mental disease or defect. The court, *Fuger, J.*, found that the petitioner had failed to meet the burden imposed by *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), because he could not show that he was prejudiced by either Ruane's or Adamo's assistance. The court, accordingly, denied the petition for habeas relief. Judge Fuger subsequently denied the petition for certification to appeal. This appeal followed.

We begin by setting forth the applicable standard of review. "Faced with a habeas court's denial of a petition

for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . For the petitioner to prevail on his claim of ineffective assistance of counsel, he must establish both that his counsel's performance was deficient and that there is a reasonable probability that, but for the counsel's mistakes, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 83 Conn. App. 595, 597, 850 A.2d 1063, cert. denied, 271 Conn. 905, 859 A.2d 560 (2004).

"We examine the petitioner's underlying claim of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by

the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [supra, 466 U.S. 668], the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . .

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 424–25, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago* v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006).

Our analysis of whether the court abused its discretion in denying certification to appeal necessarily is driven by the petitioner's underlying ineffective assistance claims against Adamo, his first habeas counsel. See *Simms* v. *Warden*, supra, 230 Conn. 612. The petitioner claims that Adamo rendered ineffective assistance when he (1) failed to call Falk to the witness stand, (2) failed to pursue zealously an issue that was raised in the habeas petition, (3) failed to call Ruane to the witness stand and (4) failed to question Ruane properly when the state called him to the witness stand. We address these claims in turn.

I

We begin our analysis of the petitioner's appeal by disposing of his claim that Adamo rendered ineffective assistance by failing to call Falk to the witness stand and failing to pursue a claim that Falk was ineffective as appellate counsel. This claim arises from Adamo's inclusion in the petitioner's first habeas petition of an allegation that Falk's representation of the petitioner on his direct appeal was ineffective. At the first habeas hearing, however, Adamo failed to call Falk to the witness stand or to present any evidence regarding Falk's alleged ineffective assistance. The petitioner now claims that Adamo's abandonment of this claim

amounts to ineffective assistance on the part of Adamo. We disagree.

At the second habeas hearing, Adamo testified that the inclusion of the ineffective assistance allegation against Falk in the first habeas petition was done merely to placate his client—Adamo did not believe the claim had any merit. On the basis of his assessment that the claim was meritless and would fail, Adamo decided it would not be prudent to call Falk to testify. Adamo's assessment of Falk's representation was corroborated through Falk's uncontradicted testimony at the second habeas hearing that only those issues likely to succeed were presented to our Supreme Court on appeal. In light of this uncontradicted testimony, Adamo's abandonment of the claim against Falk was a strategic decision that merely eliminated a weaker argument from the petition. As we stated in *Vivo* v. *Commissioner of Correction*, 90 Conn. App. 167, 876 A.2d 1216, cert. denied, 275 Conn. 925, 883 A.2d 1253 (2005), "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible . . . . " (Internal quotation marks omitted.) Id., 172. The petitioner has set forth no persuasive arguments as to why Adamo's failure to pursue a meritless claim amounts to deficient performance.

## II

The petitioner's next claim is that Adamo's representation was deficient in failing to call Ruane to the witness stand at the first habeas hearing. Specifically, the petitioner claims that Adamo "took an unnecessary risk in failing to call [Ruane] and almost lost the opportunity to question one of the main witnesses in the case." The petitioner's assertion that Adamo's failure to call Ruane was somehow evidence of deficient performance lacks

any evidentiary or legal support, and we fail to see any merit in the petitioner's claim.

During the first habeas hearing, Adamo and the prosecutor formed a "gentleman's agreement," under which the state's attorney would call Ruane to the witness stand to testify. Adamo believed that this arrangement would be advantageous because he would then be able to ask Ruane leading questions and not be hampered by the restrictions imposed on the questioning of a witness on direct examination. The second habeas court acknowledged in its decision that this was a risky move by Adamo because there was no real guarantee that Ruane would be called as a witness. The court, however, found that the gentleman's agreement was in fact honored and that Adamo was able effectively to elicit testimony from Ruane on cross-examination. Accordingly, the court ruled that no prejudice accrued to the petitioner because Ruane testified at the first habeas hearing.

The petitioner has put forth no argument as to why Adamo's decision amounted to ineffective assistance of counsel when the agreement was honored and Ruane did in fact testify. We therefore cannot say that Adamo's performance was deficient in this regard.

### III

The petitioner's final claim is that Adamo's questioning of Ruane was ineffective. The petitioner's two part argument is that Adamo's examination was ineffective because (1) it consisted of "approximately ten questions" and (2) the questions asked did not include whether he advised the petitioner that he had the right to testify and whether he informed the petitioner that he could choose not to proceed with the insanity defense. We address each of these issues in turn.

## A

The first part of the petitioner's claim asserts that Adamo provided ineffective assistance because he failed to ask Ruane a sufficient number of questions. The petitioner's brief, however, does not present questions that Adamo should have asked but did not, nor does it offer additional areas of inquiry that Adamo failed to explore. More importantly, the petitioner sets forth no case law or legal principles that dictate a finding of ineffective assistance based solely on the number of questions asked of a witness. Indeed, such a holding would create absurd results because effective representation cannot be gauged solely by the number of questions counsel poses to a witness but, rather, must be determined on the basis of the answers that those questions are designed to elicit. The brevity with which a skillful attorney can conduct an effective examination of a witness simply cannot be the basis for granting a writ of habeas corpus. To conclude otherwise would be the quintessential elevation of form over substance. Accordingly, the petitioner's bald assertion that Adamo's representation was ineffective for failing to ask Ruane a sufficient number of questions must fail.[3]

## B

The second part of the petitioner's claim is that Adamo provided ineffective assistance because he questioned Ruane inadequately in two areas during cross-examination. Specifically, the petitioner asserts that Adamo inadequately questioned Ruane about whether Ruane had advised the petitioner that he had the right to testify or whether Ruane had informed the petitioner

---

[3] The petitioner also fleetingly asserts in his brief that Adamo's representation was ineffective because his closing argument was too short and his entire examination of Ruane "only took two transcript pages." These claims likewise lack legal support, and we find them to be without merit.

that he could choose not to proceed with the insanity defense. We are not persuaded.

Adamo testified at the second habeas hearing that during the course of the first habeas proceeding, he had talked with Ruane off the record and that Ruane stated that he had advised the petitioner that he had the right to testify and that the decision to exercise that right was his. On the basis of this conversation, Adamo believed that having Ruane testify about this matter would have been harmful to the petitioner's case because it showed that Ruane was a competent attorney. The second habeas court credited this testimony in finding that the failure to question Ruane on whether he told the petitioner that it was his right to testify was a strategic decision and not deficient performance. The court further noted that it could not find any prejudice flowing to the petitioner from his failure to testify at trial because the evidence of his guilt was "overwhelming" and his proposed testimony was simply to say, "I'm not guilty." The court found that although the petitioner's proposed testimony certainly would have been additional evidence for the jury to consider, it seemed to fly in the face of all the evidence presented from which the jury concluded that the petitioner was guilty beyond all reasonable doubt. On the basis of the content of the petitioner's proposed testimony, no prejudice flowed from his failure to testify that would have undermined confidence in the outcome of his criminal trial. We agree with the court that Adamo's representation was not deficient in this regard.

The court next addressed the petitioner's claim that Ruane used the insanity defense against the petitioner's wishes. The court found that the petitioner had established though his testimony at the second habeas hearing that he did not want to have the insanity defense raised at his underlying criminal trial. The court, however, did not make a finding that the petitioner in fact

objected to Ruane's use of the insanity defense during the criminal trial. The court simply concluded that even if the ultimate decision regarding which defense to present rested with the petitioner,[4] the imposition of the insanity defense against the petitioner's wishes did not result in any prejudice. The petitioner now claims that Adamo's failure to question Ruane on whether he used the insanity defense against the petitioner's wishes amounts to ineffective assistance because Adamo failed to "flush out why such actions were prejudicial to the petitioner." We are not persuaded by the petitioner's argument because the petitioner has not shown that he in fact objected at his criminal trial to the imposition of an insanity defense.

We begin our analysis of this part of the petitioner's claim by noting that the constitutional status of a defendant's right to reject an insanity defense is an unresolved issue.[5] *Dean* v. *Superintendent, Clinton Correctional Facility*, 93 F.3d 58, 61 (2d Cir. 1996) ("[there is] significant uncertainty surrounding the constitutional status of a defendant's right to reject an insanity defense"), cert. denied sub nom. *Dean* v. *Senkowski*, 519 U.S. 1129, 117 S. Ct. 987, 136 L. Ed. 2d 868 (1997). In accordance with "the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions"; *Negron* v. *Warden*, 180 Conn. 153, 166, 429 A.2d 841 (1980); we need not answer this unresolved constitutional question absent a showing that the petitioner objected at his criminal trial to the use of an insanity defense. See also *Dean* v. *Superintendent, Clinton Correctional Facility*, supra, 61–62.

---

[4] The court conceded that it was unclear as to whether counsel can impose an insanity defense over the objection of a defendant.

[5] Because the petitioner has not alleged that the Connecticut constitution affords any greater protection than the federal constitution, our review of the petitioner's appeal is limited to his federal constitutional claims. See footnote 1.

Our determination of whether the petitioner objected to the use of an insanity defense is guided by the reality that effective counsel must oftentimes persuade a client to chose a legal strategy that the client instinctively disfavors. "Thus, a court reviewing an ineffective assistance of counsel claim based on the imposition of an insanity defense must be careful not to confuse, through the prism of hindsight, persuasion with coercion and disagreement with objection. Rather, the court must review such a claim in the context of an adversarial process which the Constitution advances as the essential ingredient of a fair trial.

"Thus, in accordance with the burden imposed on the defendant by [*Strickland* v. *Washington*, supra, 466 U.S. 687], a petitioner claiming ineffective assistance of counsel based on counsel's imposition of an insanity defense over petitioner's objection bears the burden of showing that he in fact objected. In accordance with our acknowledgement of the vigor with which competent defense counsel advises a client on a strategic decision as significant as an insanity defense or plea, a petitioner who does not state an objection on the record must show not only that he 'disagreed' with counsel, but that his 'will was overborne by his counsel.' [See *United States* v. *Teague*, 953 F.2d 1525, 1535 (11th Cir.) (en banc) (affirming District Court's determination that the defendant's 'will was not overborne' on the decision not to testify), cert. denied, 506 U.S. 842, 113 S. Ct. 127, 121 L. Ed. 2d 82 (1992)]. Disagreement colored by acquiescence is not sufficient." *Dean* v. *Superintendent, Clinton Correction Facility*, supra, 93 F.3d 62; accord *Frascone* v. *Duncan*, Docket No. 01 CV 5924 (GBD), 2005 U.S. Dist. LEXIS 11687, *6–7 (S.D.N.Y. June 14, 2005).

On this record, the petitioner has not met his burden of showing that he in fact objected to Ruane's use of

an insanity defense.[6] At the second habeas hearing, the petitioner testified that Ruane failed to tell him that the use of an insanity defense at trial was the petitioner's decision. The petitioner further testified that although he did not want to use the insanity defense, he did not believe he had any say in the decision of what defense to present. There is no indication, however, that the petitioner ever made a direct objection to the court at any time during the trial, including those portions of the trial when the relevant testimony and argument concerning the petitioner's mental state was introduced.

The petitioner has also failed to meet his alternative burden of showing that his will was "overborne" by counsel. The petitioner refers to a two page excerpt from the June 11, 1996 trial transcript where Ruane moves to withdraw from the case as evidence of the petitioner's disagreement with Ruane's desire to use an insanity defense. Ruane had the following colloquy with the court: "I have serious reservation as to whether my client will listen to my advice in what defense to put on. . . . [A]t least at this juncture, it does appear this

---

[6] Because we find that the petitioner has not met his burden of establishing that he objected to the use of an insanity defense, we decline to address the issue of whether prejudice may be presumed from the imposition of an insanity defense against a defendant's wishes. See generally *United States* v. *Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) (presumption of prejudice found in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified"). We do note, however, that this is an unsettled area of federal constitutional law. See, e.g., *United States* v. *Williamson*, 53 F.3d 1500, 1511 (10th Cir.) ("the admission by counsel of his client's guilt to the jury . . . represents a paradigmatic example of the sort of breakdown in the adversarial process that triggers a presumption of prejudice"), cert. denied sub nom. *Dryden* v. *United States*, 516 U.S. 882, 116 S. Ct. 218, 133 L. Ed. 2d 149 (1995); *United States* v. *Holman*, 314 F.3d 837, 840 (7th Cir. 2002) (conceding guilt may be valid trial strategy), cert. denied, 538 U.S. 1058, 123 S. Ct. 2238, 155 L. Ed. 2d 1108 (2003); see also *Jones* v. *State*, 110 Nev. 730, 738–39, 877 P.2d 1052 (Nev. 1994) (applying presumption of prejudice to imposition of insanity defense against defendant's wishes).

morning that my client does not listen to my advice. That might change, of course, but I can't—I don't know whether it will change, [and] I'd be in a difficult position to try the case and make those decisions unilaterally if, in fact, he disagreed with me as to what defense to put on." Although this colloquy certainly shows some level of disagreement between the petitioner and Ruane, it falls short of establishing that the petitioner's will was overborne by counsel. At most, it evidences that Ruane recognized that at that point in the proceedings, his client was disagreeing with which defense to present. Furthermore, shortly after moving to withdraw, Ruane told the court: "Your Honor, I've consulted with the members of my firm, and we're confident that [the petitioner's] attitude today is a mere blip on the otherwise tranquil relationship we've had, and so we're not moving to withdraw. We think this problem will work out. If it continues, we will advise the court so that it does not go too far along." There is no indication anywhere in the record before us that Ruane subsequently failed to convince the petitioner to proceed with the insanity defense. In addition, Ruane testified at the first habeas hearing that his relationship with the petitioner did not deteriorate during the trial and that the petitioner sent him holiday cards and notes. Even more importantly, the petitioner argued directly to the court at his criminal trial that he required the services of a translator and that trial should be delayed until his relatives arrived from overseas. The petitioner, therefore, was not incapable of making his views known.

The petitioner has not carried his burden of showing that he objected to the insanity defense or that his will was overborne. Therefore, under *Strickland*, the petitioner has failed to show how either his trial counsel or first habeas counsel was deficient. See *Strickland v. Washington*, supra, 466 U.S. 687.

We carefully have reviewed the record, the court's ruling and the briefs submitted by the parties. The petitioner has not demonstrated that the issues raised with regard to the court's dismissal of his petition for a writ of habeas corpus on the issue of ineffective assistance of counsel are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised deserve encouragement to proceed further. See *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). Having failed to satisfy any of those criteria, the petitioner has failed to demonstrate that the court's denial of his petition for certification to appeal, relative to his ineffective assistance of counsel claim, reflects an abuse of discretion. See *Simms* v. *Warden*, supra, 230 Conn. 616.

The appeal is dismissed.

In this opinion the other judges concurred.