******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KENNETH S. KEMON *v.* KENNETH BOUDREAU,
EXECUTOR (ESTATE OF ELIZABETH LEE
KEMON BOUDREAU), ET AL.
(AC 42918)

KENNETH KEMON *v.* KENNETH BOUDREAU,
EXECUTOR (ESTATE OF ELIZABETH
LEE KEMON BOUDREAU), ET AL.
(AC 42919)

Alvord, Moll and Alexander, Js.

*Syllabus*

The plaintiff, S, and his sister, E, were beneficiaries of a trust, executed by
their father. E was the original trustee until her death in 2016, when
the defendant K became the successor trustee. Upon E's death, K repre-
sented to S that the trust's assets had been fully disbursed to S and E,
but for $50,000 that had been set aside in a lawyers' trust account as a
litigation reserve. Thereafter, the Probate Court approved an accounting
submitted by K in 2016. Subsequently, S appealed to the Superior Court
in 2017 from the probate order approving the 2016 accounting, claiming
that the 2016 accounting was incomplete. In addition, S commenced a
separate action in 2018 in the Superior Court, with similar claims to the
probate appeal, but he also included claims asserting breach of trust,
breach of the implied covenant of good faith and fair dealing, breach
of fiduciary duty, and tortious interference with an expectation of inheri-
tance in counts two, three, four and six against K for his actions involving
the payment of various fees and the $50,000 litigation reserve. The cases
were consolidated for trial, and the trial court rendered judgment for
the defendants in each case. *Held*:

1. The trial court erred in determining that S had abandoned counts two,
three, four, and six at trial in the Superior Court action on the basis of
statements by S's counsel made during closing argument, as S adequately
advanced counts two, three, four, and six at trial for the court's consider-
ation: during closing argument, S's counsel identified punitive damages
in the form of attorney's fees as one of S's requests for relief predicated
on K's alleged "wilful, wanton conduct," counts two, three, four, and
six were supported by allegations that K had engaged in "wilful, wanton"
conduct, and, collectively, counsel's statements implicated the allega-
tions pleaded by S in support of those counts concerning K's conduct;
moreover, the trial court's articulation addressing counts two, three,
four, and six must be disregarded, as the articulation was inconsistent
with the memorandum of decision in which the trial court originally
disposed of those counts only on the ground that S had abandoned
them, and the articulation instead improperly addressed the merits of
all or some of S's claims.

2. The trial court erred in rendering judgment in favor of K in the probate
appeal, as S's receipt of an accounting in 2018 satisfied the relief he
was pursuing in his probate appeal during its pendency; because there
was no practical relief that the court could have granted him, the court
was deprived of subject matter jurisdiction over the probate appeal, and,
accordingly, the court's lack of subject matter jurisdiction necessitated
a judgment of dismissal rather than a judgment for the defendants on
the merits and, therefore, the form of the judgment was improper.

Argued February 11—officially released June 29, 2021

*Procedural History*

Action, in the first case, for an order to compel an
accounting of a trust, and for other relief, brought to
the Superior Court in the judicial district of Hartford,
and an appeal, in the second case, from an order of the
Probate Court approving an accounting, brought to the

Superior Court in the judicial district of Hartford, where the cases were consolidated and transferred to the Complex Litigation Docket and tried to the court, *Moukawsher, J.*; judgments for the named defendant et al., from which the plaintiff filed separate appeals to this court. *Reversed in part*; *new trial in Docket No. AC 42918*; *improper form of judgment*; *reversed*; *judgment directed in Docket No. AC 42919.*

*E. James Loughlin,* for the appellant in each case (plaintiff).

*Charles D. Ray,* with whom, on the brief, were *James E. Regan* and *Angela M. Healey,* for the appellees in each case (named defendant et al.).

*Opinion*

MOLL, J. These consolidated appeals arise from a dispute between the plaintiff, Kenneth S. Kemon, who is a trust beneficiary, and the defendant Kenneth Boudreau, who is, among other things, the executor of the estate of the deceased trustee, Elizabeth Lee Kemon Boudreau (trustee). With respect to Docket No. AC 42918, the plaintiff appeals from the judgment of the trial court rendered in favor of the defendant[1] on the plaintiff's amended complaint. On appeal, the plaintiff claims that the court improperly concluded that (1) he had abandoned at trial counts two, three, four, and six of his amended complaint, and (2) to the extent that the court addressed, in a postappeal articulation, the merits of his breach of fiduciary duty claim set forth in count four of his amended complaint, the court improperly determined that there was no evidence in the record demonstrating that the defendant breached any duty owed to the plaintiff. We agree with the plaintiff that the court committed error in concluding that he had abandoned the aforementioned counts of his amended complaint. Accordingly, we reverse in part the judgment rendered in AC 42918. With respect to Docket No. AC 42919, the plaintiff appeals from the judgment of the court rendered for the defendant in the plaintiff's appeal from a probate order approving an accounting. On appeal, the plaintiff claims that the court incorrectly rendered judgment in the defendant's favor notwithstanding that the probate appeal had been rendered moot. We conclude that the probate appeal became moot during its pendency, at which point the court was divested of subject matter jurisdiction over it. We further conclude that the form of the judgment is improper because the court's lack of subject matter jurisdiction necessitated a judgment dismissing the probate appeal, rather than a judgment for the defendant on the merits. Accordingly, we reverse the judgment rendered in AC 42919.

The following facts and procedural history are relevant to our resolution of these consolidated appeals. On December 21, 2009, Solon B. Kemon, the plaintiff's father (grantor), executed an inter vivos trust (trust). The trust named Elizabeth Lee Kemon Boudreau, the plaintiff's sister, as the trustee. The plaintiff and the trustee were the primary beneficiaries of the trust.

Section 5.5 of the trust provided in relevant part that, upon request, the trustee "shall render an account of the administration of the trust to the then living adult income beneficiaries and adult remainderman . . . and the approval thereof by the living adult beneficiaries and living adult remainderman shall be conclusively binding upon all parties in interest under this [a]greement. . . ."

On August 8, 2012, the grantor died. On May 1, 2016,

the trustee died. Thereafter, the defendant was appointed as the executor of the trustee's estate.

On August 11, 2016, in order to "resolve the issues" raised in a civil action filed in July, 2016, by the plaintiff against the trustee,[2] the defendant filed with the Probate Court for the district of Simsbury a petition to approve an appended accounting reflecting the trust's transactions from August 8, 2012, to April 30, 2016 (2016 accounting). The defendant represented that, at the time of the trustee's death on May 1, 2016, the trust's assets had been fully disbursed to the plaintiff and the trustee with the exception of $50,000 that had been set aside in a lawyers' trust account by Attorney John F. Kearns III, who was the defendant's attorney at the time and who had represented the trustee prior to her death, "for litigation and probate accounting fees due to the acrimony between the parties" ($50,000 litigation reserve).[3] On January 18, 2017, the Probate Court, *Becker, J.,* approved the 2016 accounting, but ordered the defendant to amend it to include a certain condominium unit in Simsbury (Simsbury condominium unit) and its fair market value. On January 20, 2017, the defendant filed an informational schedule to the 2016 accounting, which listed the Simsbury condominium unit as having no value.

Soon thereafter, the plaintiff appealed to the Superior Court from the probate order approving the 2016 accounting (2017 probate appeal). In a revised complaint filed on May 18, 2017, which became the plaintiff's operative pleading in the 2017 probate appeal, the plaintiff alleged, inter alia, that the 2016 accounting was incomplete. The defendant[4] subsequently filed an answer denying the material allegations set forth in the revised complaint.

On February 5, 2018, during the pendency of the 2017 probate appeal, the plaintiff commenced a separate civil action in the Superior Court against the defendant (2018 action).[5] The plaintiff's original one count complaint filed in the 2018 action was substantively similar to his revised complaint filed in the 2017 probate appeal— that is, the crux of the allegations in those pleadings was that the 2016 accounting was incomplete.

On March 31, 2018, the 2017 probate appeal and the 2018 action were consolidated for trial, and they subsequently were transferred to the Complex Litigation Docket. In August, 2018, while the 2017 probate appeal and the 2018 action were pending, the defendant delivered to the plaintiff an updated accounting for the trust (2018 accounting).

On October 26, 2018, the plaintiff filed an amended six count complaint in the 2018 action, which became his operative complaint therein. In count one, titled "Action to Compel Accounting," the plaintiff alleged only that the defendant had delivered to him the 2018

accounting. The remaining counts included an objection to the 2018 accounting, as well as claims asserting breach of trust, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and tortious interference with an expectation of inheritance. On January 31, 2019, the defendant filed a revised answer denying the material allegations of the amended complaint, except for his admission to the allegation in count one that he had delivered the 2018 accounting to the plaintiff. The defendant also asserted various special defenses and claimed two setoffs. On February 19, 2019, the plaintiff filed a reply denying the special defenses and the setoffs.

The 2017 probate appeal and the 2018 action were tried to the trial court, *Moukawsher, J.*, on March 26, 27, and 28, 2019.[6] On March 29, 2019, the court issued a memorandum of decision rendering judgment in the defendant's favor in each of the matters. On April 17, 2019, the plaintiff filed a combined motion seeking to open the judgments and to reargue, which the court denied on April 23, 2019. These consolidated appeals followed.[7] Additional facts will be set forth as necessary.

I

AC 42918

In AC 42918, the plaintiff appeals from the judgment rendered by the trial court in the defendant's favor in the 2018 action. The plaintiff claims that (1) the court improperly concluded that he had abandoned counts two, three, four, and six of his amended complaint at trial, and (2) to the extent that the court adjudicated count four of his amended complaint, asserting breach of fiduciary duty, in a postappeal articulation, the court improperly determined that there was no evidence demonstrating that the defendant breached a legally recognized duty owed to the plaintiff. We agree with the plaintiff's first claim of error.[8]

The following additional facts are relevant to our resolution of this appeal. The plaintiff's amended complaint contained the following six counts: (1) demand to compel an accounting (count one); (2) breach of trust (count two); (3) breach of the implied covenant of good faith and fair dealing (count three); (4) breach of fiduciary duty (count four); (5) objection to the 2018 accounting (count five);[9] and (6) tortious interference with an expectation of inheritance (count six). Count one did not assert a claim actually seeking relief; rather, the plaintiff alleged only that the defendant had delivered the 2018 accounting to him.[10] In support of counts two, three, four, and six, the plaintiff alleged, inter alia, that he had suffered harm as a result of the defendant's failure to provide him with the 2018 accounting until more than two years following the trustee's death. Counts three, four, and six also alleged certain "aggravating circumstances," including that the defendant

refused to provide the plaintiff with access to trust records. To further support counts two, three, four, and six, the plaintiff alleged, either directly or by incorporation, that the defendant's conduct had been "wilful, wanton and carried out with the reckless disregard for the interests and rights of the plaintiff, causing damages for which the defendant is liable." In count five, the plaintiff alleged that the 2018 accounting was "unsatisfactory" in a number of ways.

At the end of the first day of evidence, the trial court notified the parties that, as a matter of procedure, the court preferred that they "get done with the evidence and then we have what argument we need to have. In other words, I don't ask the parties to make one hour presentations followed by half an hour followed by twenty minutes or anything like that. What I prefer is a lively exchange, which, in other words, I'll give the parties some idea of what I'm thinking about, and then we can have an exchange in which I ask questions and make notes and do that to the extent we have to. If there are any questions of law that are in dispute, which I'm not sure there will be, then that would be the time to bring them to my attention. In other words, I don't need posttrial briefs. What I need is a thorough closing—closing argument exchange. And if there's something that comes up during closing argument that you need more time about or you want to submit something about, we just discuss it at the time. I'm not going to cut anybody off or prevent them from providing me with things that are needed, but I'd much prefer a vigorous closing argument to a period of thirty days going by where everyone forgets about the case and then we try to brief it and then, you know, several months later we have argument or something like that. So my intention is we go right into argument once—once evidence is over. And I don't mean that entirely literally. Sometimes people say, 'Well, can't we come back tomorrow or something?' I'm not going to press you instantly to go into closing argument. But don't be thinking so much about speech making for closing arguments as an exchange. I'm going to give you some ideas of what I'm thinking about, and then you can answer my questions and tell me where I've got it wrong and where you think I've got it right. And we can go back and forth as long as we need to make it productive. So any questions on that?" Neither party objected to that proposed procedure.

On the final day of trial, after the close of evidence, the following colloquy occurred:

"The Court: Now we have closing arguments to discuss. So what I'd suggest is that if the parties want the time we can do closing arguments at 2 p.m. If you are urgently wishing to end this whole thing by 1 [p.m.] we could start closing arguments at 12:30 [p.m.] and get them over with. I'll leave it up to the parties.

"[The Plaintiff's Counsel]: My understanding was there was going to be a lively exchange, you were going to give us some issues to think about and then—

"The Court: Yeah, I'm going to ask questions and we'll be back and forth.

"[The Plaintiff's Counsel]: And I'm looking forward to that to bring more issues that I can understand and look into and then I got the impression that we were going to come back a day or two later after that?

"The Court: Well, what I indicated about that—no, no, no, what I indicated about that is if you wanted to come back a day or two from now to do closing arguments, which would be the lively exchange I described we can do that. I don't see any reason why we shouldn't do them while you're here. And I think probably to give you enough time you might want to wait until 2 [p.m.], but if you don't want to we can take a break . . . and pick it up at 12:30 [p.m.], but I wouldn't want to go less than a half an hour. But I'm going to ask questions, such as, I want to make sure I understand the universe of things that you're claiming in the case. What is the relief that you're after and then the evidence that supports these things and then that tends to lead to the back and forth. [The defendant's counsel] will comment on those things and we'll go back and forth about it. So the question is do you want to do [it] at 12:30 [p.m.] or 2 [p.m.]?

"[The Plaintiff's Counsel]: I'm sort of feeling like doing it right now.

"The Court: Oh.

"[The Plaintiff's Counsel]: But what happens if in the middle of it there's a question of law that I hadn't thought of?

"The Court: Well, then you'd indicate that to me and I can give you time or we'll do whatever it is.

"[The Plaintiff's Counsel]: Okay.

"The Court: Sometimes what happens is something comes up and I can get a quick answer to it, sometimes I can't. But I'm not going to just say times up you don't get to look up this case or something like that. I won't do that to you. But you want to start right now?

"[The Plaintiff's Counsel]: I'm ready right now.

"[The Defendant's Counsel]: Your Honor, that's certainly fine with the defendant to start now."

After a brief discussion regarding the status of an exhibit, counsel for both parties reaffirmed that they were prepared to proceed with argument. The court then asked the plaintiff's counsel to specify "each thing that [the plaintiff is] asking for in terms of relief." The plaintiff's counsel identified four items. First, he requested that the $50,000 litigation reserve be returned

to the trust. He argued that, under the common law, the defendant was not entitled to those funds unless the defendant prevailed in the litigation.[11]

Second, the plaintiff's counsel requested $9225 as reimbursement for legal fees that the plaintiff had incurred with respect to his portion of certain real property in Vermont that had been left to the plaintiff and the trustee by their deceased mother's trust (Vermont property). He argued that the trustee had used funds from the trust (that is, the inter vivos trust executed by the grantor) to pay fees in developing her portion of the Vermont property, such that he was entitled to reimbursement for fees that he had expended in relation to his portion of the Vermont property.

Third, the plaintiff's counsel requested $11,907, which represented condominium fees for the Simsbury condominium unit that the trustee had paid using trust funds. He argued that those fees could have been avoided.

Last, the plaintiff's counsel requested common-law punitive damages in the form of attorney's fees for "wilful, wanton conduct." In support thereof, the plaintiff's counsel referenced the portion of count six alleging that the defendant had engaged in tortious conduct interfering with the plaintiff's expectation of an inheritance, which, the plaintiff further alleged, was "wilful, wanton and carried out with the reckless disregard for the interests and rights of the plaintiff . . . ." The court asked the plaintiff's counsel to confirm that he was requesting that the court "make a finding [awarding attorney's fees as punitive damages] and then hold a hearing later on [regarding] the amount if [the court made] such a finding," to which counsel replied in the affirmative.

At the close of argument, the plaintiff's counsel stated the following: "We have spoken about please give us an inventory and all the receipts and all the distributions [with respect to the trust] for the period from inception until . . . death. That's what we have said. All along the way counsel has addressed other issues that we may have brought up during the litigation that were not presented here at trial. But when we came here to trial all we talked about was we needed information about [the trust from] inception to death and we didn't get those until about a month ago [in February, 2019],[12] notwithstanding all the demands that we had made. And [the defendant] acknowledge[s] that [the] $50,000 [litigation reserve] was held back. [The trustee] told [the defendant] 'don't tell [the plaintiff] that I've died.'[13] It's almost like a movie. Those were [the trustee's] last words. And so [the plaintiff] didn't know that the money was there. He didn't know that he was supposed to be the trustee until the money was already gone.[14] And then after that they refused the records. They refused the accountings. We asked for checks. We asked for the invoices. There were 4000 pages on [an] . . . elec-

tronic disc and that's when all the answers were provided and that's when we pared down our argument to the few that we've made right now.

"Had we received that [electronic] disc, had we received those materials back in April, [2016], when I initially demanded them, nicely demanded them, none of my fees would have been incurred. We would have had some of that [$50,000 litigation reserve] sent back. None of this would have happened." (Footnotes added.)

In its memorandum of decision, the court stated that the 2017 probate appeal and the 2018 action "reflect [the plaintiff's] complaints against [the trustee's] handling of the trust. Lest there be confusion, the plaintiff . . . asks for four things and four things only: [1] $50,000 [that] the trust put aside anticipating litigation and has fully spent; [2] $9225 in legal fees [the plaintiff] spent developing his half of the [Vermont property] . . . left to [the plaintiff and the trustee] equally; [3] $11,907 in condo fees [the plaintiff] says should have been avoided; [and (4) the plaintiff's] attorney's fees in this litigation." As to the plaintiff's claim concerning the $50,000 litigation reserve, the court concluded that the claim failed because the defendant was the prevailing party. With respect to the plaintiff's claim seeking $9225 as reimbursement for his legal fees in relation to the Vermont property, the court concluded, inter alia, that the plaintiff's request for reimbursement was untimely. As to the plaintiff's claim seeking $11,907 in fees relating to the Simsbury condominium unit, the court concluded that (1) the terms of the trust limited the trustee's liability to wilful misconduct and (2) the trustee made an unassailable "judgment call" to attempt diligently to sell the Simsbury condominium unit, but ultimately was unsuccessful.[15] With respect to the plaintiff's final claim seeking punitive damages, the court concluded that "[the plaintiff] made clear on the record that his only claim for attorney's fees was based upon a claim that they should be awarded as punitive damages. [The trustee] did nothing wrong. There is no basis for [the plaintiff] to recover his [attorney's] fees." The court then rendered judgment for the defendant without reference to any specific counts of the plaintiff's amended complaint.

In his ensuing combined motion to open the judgments and to reargue, the plaintiff contended in relevant part that the court's memorandum of decision disposed of count five, asserting an objection to the 2018 accounting, but failed to address counts two, three, four, or six, which, according to the plaintiff, contained allegations that the defendant "wilfully, wantonly and recklessly withheld trust information from the plaintiff that, had it been presented when originally requested, would have avoided litigation altogether." The plaintiff further asserted that the court focused its analysis on the trustee's conduct while ignoring the plaintiff's allegations

against the defendant, notwithstanding that "this action is against the defendant . . . and the causes of action against him . . . should be adjudicated . . . ." In denying the plaintiff's motion, the court stated in relevant part that "the court was not required to make fact findings with respect to matters immaterial to the relief sought. The other matters raised in the motion were immaterial in that regard."

Following the filing of these consolidated appeals, pursuant to Practice Book § 66-5, the plaintiff filed a motion seeking an articulation of the court's disposition of counts two, three, four, and six. The plaintiff contended that the memorandum of decision did not address any of the alleged actions committed by the defendant following the trustee's death, which formed the crux of counts two, three, four, and six.

On August 23, 2019, the court issued an articulation stating that the memorandum of decision "does not address the conduct of the defendant . . . because at trial the plaintiff . . . chose to limit the relief he claimed to matters that turned only on alleged wrongdoing by [the trustee]. The only relief item that affected [the defendant] at all was a claim that [the defendant] shouldn't have used [the $50,000 litigation reserve] for fees in this litigation. About this, [the plaintiff] conceded that he would have to win his claims of wrongdoing by [the trustee] to win his claim that this money shouldn't have been used. And [the plaintiff] didn't win. So by [the plaintiff's] own admission, he couldn't win his claim about the fees either."

The court further stated that, "[e]ven if findings should be made regarding conduct not at issue in this case, having considered all of the evidence, it is plain that [the defendant] committed no breach of any duty as [the plaintiff] may have alleged it. The evidence as it relates to [the defendant] revealed in substance only quibbles over the timing and the completeness of documents provided during the course of the dispute. No evidence supported claims concerning [the defendant] breaching a legally recognized duty. Instead, the evidence at trial focused on the matters related to the [trustee's] decisions and actions before [the defendant] assumed her duties upon her death. [The plaintiff's] only other complaint about [the defendant] appeared to be his failure promptly to inform [the plaintiff] that [the trustee] had died. But [the plaintiff] never connected this claim to a duty owed that was breached, and which, by virtue of being breached, merited any of the relief [the plaintiff] chose to seek at trial."

In summary, the court stated that "[the defendant's] actions were not in issue at the trial because they were unrelated to the claims [the plaintiff] chose to press. But even if they were, [the defendant] breached no duty, and his actions were disconnected to the actual wrongs and relief [the plaintiff] claimed."

The dispositive claim raised by the plaintiff is that the court improperly concluded that, on the basis of his counsel's statements during closing argument, he had abandoned counts two, three, four, and six at trial. The plaintiff maintains that the record reflects that he preserved those counts for adjudication by the court.[16] The defendant argues that the court correctly concluded that the plaintiff had abandoned counts two, three, four, and six. We agree with the plaintiff.

The following standard of review and legal principles are applicable here. "Because . . . the idea of abandonment involves both a factual finding by the trial court and a legal determination that an issue is no longer before the court, we will treat this claim as one of both law and fact. Accordingly, we will accord it plenary review." *Solek* v. *Commissioner of Correction*, 107 Conn. App. 473, 479, 946 A.2d 239, cert. denied, 289 Conn. 902, 957 A.2d 873 (2008).

Pursuant to Practice Book § 5-2, "[a]ny party intending to raise any question of law which may be the subject of an appeal must either state the question distinctly to the judicial authority in a written trial brief under Section 5-1 or state the question distinctly to the judicial authority on the record before such party's closing argument and within sufficient time to give the opposing counsel an opportunity to discuss the question. If the party fails to do this, the judicial authority will be under no obligation to decide the question." Additionally, Practice Book § 64-1 (a) provides in relevant part that "[t]he trial court shall state its decision either orally or in writing . . . in rendering judgments in trials to the court in civil and criminal matters . . . . The court's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor. . . ." "The responsibility of a court is to respond to those claims fairly advanced." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 334, 966 A.2d 292, cert. denied, 292 Conn. 902, 971 A.2d 40 (2009). "The mere recital of . . . claims in a [complaint], without supporting oral or written argument, does not adequately place those claims before the court for its consideration. This is particularly true when counsel has been warned by the court . . . that it would consider abandoned any claims not advanced by counsel in closing argument." *Solek* v. *Commissioner of Correction*, supra, 107 Conn. App. 480–81.

After a careful review of the record, we conclude that the plaintiff adequately advanced counts two, three, four, and six at trial for the court's consideration. During closing argument, the plaintiff's counsel identified punitive damages in the form of attorney's fees as one of the plaintiff's requests for relief predicated on the defendant's alleged "wilful, wanton conduct . . . ." Counts two, three, four, and six were supported by allegations

that the defendant had engaged in "wilful, wanton" conduct. Additionally, at the end of his closing argument, the plaintiff's counsel argued in relevant part that (1) at trial "all we talked about was we needed information about [the trust from] inception to death," (2) despite the plaintiff's demands, the defendant refused to supply trust records and accountings, (3) the defendant delivered to the plaintiff the electronic disc containing trust documents in February, 2019; see footnote 12 of this opinion; and (4) had the plaintiff been provided with the information contained on the electronic disc sooner, "none of [counsel's] fees would have been incurred, [w]e would have had some of the [$50,000 litigation reserve] sent back, [and] [n]one of this would have happened." Collectively, counsel's statements implicate the allegations pleaded by the plaintiff in support of counts two, three, four, and six concerning conduct by the defendant.[17] Accordingly, we conclude that the court incorrectly concluded that the plaintiff had abandoned counts two, three, four, and six at trial.

At this juncture, we must address briefly the court's August 23, 2019 articulation. In the articulation, the court (1) reiterated that conduct by the defendant, which comprised the core of the allegations in counts two, three, four, and six, was not at issue at trial because it was "unrelated to the claims [the plaintiff] chose to press," and (2) "even if" the defendant's actions were at issue, the plaintiff failed to demonstrate that the defendant had breached any duty owed to the plaintiff. The court's memorandum of decision, its denial of the plaintiff's combined motion to open the judgments and to reargue, and its articulation, make apparent that the court originally disposed of counts two, three, four, and six *only* on the ground that the plaintiff had abandoned them. To the extent that the court, in its articulation, addressed the merits of any or all of counts two, three, four, and six, the articulation is inconsistent with the memorandum of decision and must be disregarded because "[a]n articulation is not an opportunity for a trial court to substitute a new decision nor to change the reasoning or basis of a prior decision." *Koper* v. *Koper*, 17 Conn. App. 480, 484, 553 A.2d 1162 (1989); see also *Sosin* v. *Sosin*, 300 Conn. 205, 240, 14 A.3d 307 (2011) (disregarding trial court's articulation and order that were inconsistent with court's original order, as subsequently clarified, regarding interest award); *Casiraghi* v. *Casiraghi*, 200 Conn. App. 771, 785 n.13, 241 A.3d 717 (2020) (trial court could not use articulation to set forth findings concerning plaintiff's ability to pay and status of his payment obligations regarding former marital home when court admitted that it did not make such findings in court's original contempt decision); *Pecan* v. *Madigan*, 97 Conn. App. 617, 623, 905 A.2d 710 (2006) (trial court could not use articulation to state that it had stricken counts as legally insufficient when court's original decision reflected that court had

stricken counts on basis of prior pending action doctrine), cert. denied, 281 Conn. 919, 918 A.2d 271 (2007); *Kelly* v. *Kelly*, 54 Conn. App. 50, 54 n.3, 732 A.2d 808 (1999) (this court was "constrained to follow" trial court's original decision granting motions rather than court's inconsistent articulation denying motions).

In sum, we conclude that the court committed error in concluding that the plaintiff had abandoned counts two, three, four, and six at trial. Accordingly, we reverse the portion of the court's judgment rendered on those counts and remand the case for a new trial on those counts.

## II

### AC 42919

In AC 42919, the plaintiff appeals from the judgment rendered in the defendant's favor in the 2017 probate appeal. The plaintiff claims that the court improperly rendered judgment for the defendant notwithstanding that the 2017 probate appeal became moot following (1) the plaintiff's receipt of the 2018 accounting and (2) the court's rejection of count five of his amended complaint filed in the 2018 action, in which he asserted an objection to the 2018 accounting. For the reasons that follow, we conclude that the 2017 probate appeal was rendered moot during its pendency in the trial court, thereby depriving the court of subject matter jurisdiction over it and necessitating its dismissal.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if [the trial] court cannot grant . . . any practical relief through its disposition of the merits . . . . [I]t is not the province of [the] courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . When . . . events have occurred that preclude [the] court from granting any practical relief through its disposition of the merits, a case has become moot. . . . [B]ecause an issue regarding justiciability raises a question of law, our appellate review is plenary." (Citations omitted; internal quotation marks omitted.) *Abel* v. *Johnson*, 194 Conn. App. 120, 149–50, 220 A.3d 843 (2019), cert. granted, 334 Conn. 917, 222 A.3d 104 (2020).

The following additional facts are relevant to our disposition of this appeal. In his revised complaint, the plaintiff alleged in relevant part that the 2016 accounting was incomplete, and, therefore, he was aggrieved by the Probate Court's order approving the 2016 accounting.[18] In August, 2018, while the 2017 probate appeal and the 2018 action were pending, the defendant delivered the 2018 accounting to the plaintiff. Subsequently, the question of whether the defendant's delivery of the 2018 accounting to the plaintiff rendered the 2017 probate appeal moot was raised before the trial court. In his answer to the plaintiff's revised complaint filed on February 25, 2019, in an introductory paragraph, the defendant represented that the "[p]laintiff's counsel has acknowledged that [the 2017 probate appeal] was moot in a prior status conference . . . and suggested that the plaintiff would be withdrawing the appeal. As such, the defendant asserts that the revised complaint . . . can and should be withdrawn."

Additionally, during closing argument, the following colloquy occurred:

"[The Plaintiff's Counsel]: So, when the 2018 account[ing] was submitted you may recall that [the defendant's] counsel has throughout said the 2017 [probate] appeal is mooted by the 2018 account[ing] and I agree. But during the pendency of these proceedings I didn't know because you can't just say, yes, it's moot and then dismiss the case or withdraw the case. There has to be some sort of pleading and then some sort of resolution from the court.

"The Court: Okay. But are you telling me now that you consider the [2017] probate appeal, there's [the 2017] probate appeal and [the 2018 action] here; are you saying now that that should be dismissed as moot?

"[The Plaintiff's Counsel]: I would rather have it remanded back to the [Probate Court] saying because the 2018 account[ing] was submitted that 2018 account[ing] is controlling and as a result the [Probate] Court should enter as an order provisions in the 2018 account[ing] as that will be handed down after this hearing.

"The Court: You're telling me though that you're not asking me to overturn the 2016 accounting; is that fair, because you consider it moot?

"[The Plaintiff's Counsel]: I just get nervous.

"The Court: Well, I'm not sure what you want me to do, so at the very least you should tell me, make it clear what you're asking the court to do.

"[The Plaintiff's Counsel]: I think the effect of these proceedings should serve to sustain the [2017 probate] appeal so that absolutely [the 2017 probate] appeal, the decree of the [Probate] Court is to no effect.

"The Court: And is that because you're asking me to

find the 2018 accounting is improper?

"[The Plaintiff's Counsel]: It's supplanted.

"The Court: Because [the 2018 accounting] supplants the 2016 [accounting]?

"[The Plaintiff's Counsel]: Yes.

"The Court: And you're saying that by virtue of the— if I find that the 2018 accounting is wrong, then that would automatically mean I should overturn the probate decision on the 2016 accounting; is that what you're saying and then send the whole thing back? . . .

"[The Plaintiff's Counsel]: I don't think the 2018 accounting is wrong. I think that there are a few things that need to be tweaked. There need to be things that are surcharged, but it complies with statutory requirements. . . . On the other hand, my appeal from the [Probate Court order] was [that] it was statutorily insufficient . . . ."

Following the statements made by the plaintiff's counsel, the defendant's counsel inquired whether the 2017 probate appeal had been withdrawn. The court responded that the 2017 probate appeal had not been withdrawn and that, "[d]epending on what [the court rules], it will have implications and [the court is] going to have to sort those out."

In the memorandum of decision, the court first rejected the plaintiff's claim raised in the 2018 action challenging the 2018 accounting. The court then stated that it was rendering judgment "for the defendant in both cases." The mootness issue was not addressed by the court in the memorandum of decision or in the court's postjudgment decisions.

The plaintiff claims that the court improperly rendered judgment in the defendant's favor because the 2017 probate appeal became moot following (1) the plaintiff's receipt of the 2018 accounting in August, 2018, and (2) the court's disposition of his objection to the 2018 accounting, as asserted in count five of his amended complaint filed in the 2018 action, on March 29, 2019. We agree with the plaintiff that the 2017 probate appeal was moot at the time of judgment; however, we disagree with the plaintiff insofar as he contends that the 2017 probate appeal was not moot until the resolution of the 2018 action on March 29, 2019. We conclude, instead, that the 2017 probate appeal became moot during its pendency in August, 2018,[19] when the plaintiff received the 2018 accounting.[20]

During closing argument before the trial court, the plaintiff's counsel expressly represented that the plaintiff's receipt of the 2018 accounting mooted the 2017 probate appeal. The plaintiff repeated that representation in his combined motion to open the judgments and to reargue by asserting that, "[u]ltimately, [he] prevailed on appeal, when the full-term accounting was presented

by the defendant . . . *in August, 2018.* . . . [The court's judgment in the 2017 probate appeal] overlooks that *midlitigation the plaintiff received what he'd sought on appeal.*" (Emphasis added.) Moreover, in his principal appellate brief, the plaintiff acknowledges that the 2018 accounting satisfied the relief that he sought in the 2017 probate appeal, and in his reply brief, he represents that "the 2017 probate appeal was [filed] *for the sole purpose of compelling a full-term accounting* . . . ." (Emphasis added.)

In addition, during closing argument, the plaintiff requested that the trial court sustain the 2017 probate appeal and remand the matter to the Probate Court for additional proceedings. In his principal appellate brief, however, the plaintiff requests as relief that we reverse the judgment rendered in the 2017 probate appeal and remand the case to the trial court "with instruction that the [2017 probate] appeal is no longer justiciable and is to be withdrawn or dismissed . . . ." We construe the plaintiff's statements as abandoning any claim that the trial court could afford him practical relief in the form of sustaining the 2017 probate appeal in his favor and taking any additional action in conjunction therewith.

In light of the plaintiff's representations before the trial court, as maintained on appeal, we conclude that the plaintiff's receipt of the 2018 accounting in August, 2018, satisfied the relief that he was pursuing in the 2017 probate appeal. Following the plaintiff's receipt of the 2018 accounting, there was no practical relief that the court could have granted him, thereby depriving the court of subject matter jurisdiction over the 2017 probate appeal. We further conclude that the court's lack of subject matter jurisdiction necessitated a judgment of dismissal rather than a judgment on the merits for the defendant, and, therefore, the form of the judgment is improper.[21] See *Gershon* v. *Back*, 201 Conn. App. 225, 244, 242 A.3d 481 (2020) ("[w]henever a court finds that it has no jurisdiction, it must dismiss the case" (internal quotation marks omitted)).

The judgment in Docket No. AC 42918 is reversed only as to counts two, three, four, and six of the plaintiff's amended complaint in the 2018 action and the case is remanded for a new trial on those counts; the judgment is affirmed in all other respects; the form of the judgment in Docket No. AC 42919 is improper, the judgment is reversed and the case is remanded with direction to render judgment dismissing the 2017 probate appeal for lack of subject matter jurisdiction.

In this opinion the other judges concurred.

[1] In the two matters underlying these consolidated appeals, Kenneth Boudreau was named as a defendant (1) in his capacity as the executor of the trustee's estate, (2) in his capacity as the legal representative of the trustee, and/or (3) in his personal capacity. See footnotes 4 and 5 of this opinion. Several other individuals were named as defendants in one or both of the underlying matters, but none of those other defendants is participating in

these consolidated appeals as the plaintiff did not pursue any claims against them. For the sake of simplicity, we will refer in this opinion to Kenneth Boudreau in his collective capacities as the defendant.

[2] In July, 2016, the plaintiff filed an action in the Superior Court demanding that the trustee provide him with an accounting of the trust. See *Kemon* v. *Boudreau*, Superior Court, judicial district of Hartford, Docket No. CV-16-6069772-S. On October 7, 2016, the plaintiff withdrew that action after having learned that the trustee had died prior to service of process.

[3] During trial, Attorney Kearns testified that, upon his recommendation, the trustee decided to set aside the $50,000 litigation reserve.

[4] In the 2017 probate appeal, the defendant was named as a party only in his capacity as the executor of the trustee's estate.

[5] In the plaintiff's original complaint filed in the 2018 action, the defendant was named as a party only in his capacity as the executor of the trustee's estate. The plaintiff subsequently moved to cite in the defendant, both in his personal capacity and in his capacity as legal representative of the trustee, which the court, *Budzik, J.*, granted on October 3, 2018.

[6] With respect to the 2017 probate appeal, we observe that "[a]n appeal from a Probate Court to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court. . . . When, as here, no record was made of the Probate Court proceedings, the absence of a record requires a trial de novo." (Citation omitted; internal quotation marks omitted.) *Silverstein* v. *Laschever*, 113 Conn. App. 404, 409, 970 A.2d 123 (2009).

[7] On May 9, 2019, the plaintiff filed separate appeals from the respective judgments rendered in the 2017 probate appeal and in the 2018 action. These appeals were consolidated on June 25, 2019.

[8] As we explain later in part I of this opinion, the court could not use its articulation to address the merits of the plaintiff's claims that the court, in its memorandum of decision, had deemed to have been abandoned. Thus, our conclusion that the court improperly concluded that the plaintiff had abandoned counts two, three, four, and six of his amended complaint at trial is dispositive of the plaintiff's appeal in AC 42918.

[9] Because count five is not at issue on appeal, we limit our discussion of the allegations in support of that count. See footnote 16 of this opinion.

[10] In his principal appellate brief, the plaintiff states that his receipt of the 2018 accounting "dispensed with count [one]."

[11] Initially, as an alternative argument, the plaintiff's counsel argued that the terms of the trust barred the expenditure of the $50,000 litigation reserve. Subsequently, the plaintiff's counsel appeared to abandon that alternative argument. The court then asked the plaintiff's counsel to confirm that he had "one argument here. . . . [T]he claim here is not that the [trust] instrument wouldn't allow it. The claim is that the trustee must prevail in order to get fees; is that correct?" The plaintiff's counsel responded in the affirmative.

[12] During trial, the plaintiff testified that, in February, 2019, in response to discovery requests, the defendant delivered to the plaintiff an electronic disc with thousands of "trust documents." The electronic disc was entered into the record as a full exhibit.

[13] During trial, the defendant testified that, shortly before the trustee's death on May 1, 2016, the trustee instructed him not to inform the plaintiff of her death. The plaintiff testified that he did not learn of the trustee's death until August, 2016, in connection with the civil action that he had filed against the trustee in July, 2016. See footnote 2 of this opinion.

[14] Section 4.1 of the trust provided in relevant part that, if the trustee failed "to qualify, [was] unable to act or cease[d] to serve for any reason," then the plaintiff would be appointed as the successor trustee. During trial, the plaintiff testified that he had filed an application with the Probate Court to be appointed as the successor trustee, but he elected not to pursue the application.

[15] As the court found, "[a]fter eighteen months of trying [the trustee] gave up and turned the [Simsbury condominium unit] in for nothing to the condo association."

[16] The plaintiff is not appealing from the portion of the judgment disposing of count five in the defendant's favor.

[17] Additionally, we note that the evidence produced at trial was not limited to actions taken by the trustee prior to her death, but included the defendant's conduct following the trustee's death.

[18] As relief, the plaintiff sought (1) "such relief as is proper," (2) "[a]n accounting of [t]rust activity, from its inception to date," (3) "[j]udgment for amounts found due under such accounting," (4) damages, (5) prejudgment and postjudgment interest, and (6) any other legal or equitable relief available. On August 2, 2017, the defendant filed a motion to strike the claims for relief numbered two through five, which the court, *Shapiro*, *J.*, granted on April 3, 2018. The granting of the defendant's motion to strike is not at issue on appeal.

[19] The 2018 accounting is dated August 6, 2018. An e-mail admitted into evidence at trial in conjunction with the 2018 accounting reflects that the 2018 accounting was delivered to the plaintiff's counsel via e-mail on August 9, 2018. During trial, the plaintiff testified that he received the 2018 accounting in August, 2018, without specifying a date. The precise date in August, 2018, on which the plaintiff received the 2018 accounting is not relevant to our analysis.

[20] The plaintiff also claims that, in rendering judgment for the defendant in the 2017 probate appeal, the court applied the wrong reasoning because it relied exclusively on its rationale disposing of the 2018 action in adjudicating the 2017 probate appeal. We need not address this additional claim in light of our conclusion that the 2017 probate appeal was rendered moot during its pendency.

[21] In his appellate brief, the defendant argues that the court properly rendered judgment in his favor in the 2017 probate appeal; however, the defendant does not address the effect of the plaintiff's receipt of the 2018 accounting during the pendency of the 2017 probate appeal on the justiciability of that appeal.

------------------------------------------